# MARYLAND REPORTS.

## H. M. REVELL AND OTHERS *vs.* THE MAYOR, COUNSELLOR AND ALDERMEN OF THE CITY OF ANNAPOLIS.

*Constitutional Law—Power of Legislature over Municipality—Directing Issue of Bonds to pay for Public School Building.*

The Legislature has the power to provide for the erection of a public school building within the limits of a city, and to direct the municipal authorities to issue bonds for the purpose of paying for such building, with or without the consent of the voters of the city.

The Legislature has the right to compel a municipal corporation to levy a tax or incur a debt for a public purpose, or one within the ordinary functions of municipal government. And the erection of a building for a public school is such a purpose.

The Act of 1894, ch. 620, provided for the erection of a public school building in the city of Annapolis, in Anne Arundel County, and to pay for the same, directed the County Commissioners of Anne Arundel County to issue bonds to the amount of $20,000, and also directed the city of Annapolis to issue bonds to the amount of $10,000, without submitting the question of their issue to a vote of the citizens of Annapolis. The charter of the city authorized the Mayor, &c., to issue bonds, provided the loan was approved by a majority of the voters. The city authorities refused to issue the bonds directed by the Act, without first submitting the question to a popular vote. Upon a petition for a *mandamus* to compel the issue, filed by the Building Committee, appointed under the Act, *Held*,

1st. That the Act was a valid exercise of the legislative power.

2nd. That the apportionment of the cost of the building between the county and the city was a matter within the discretion of the Legislature.

3rd. That although a general law provides that the public schools of a county shall be under the control of the School Commissioners, with power to build and repair school houses, yet such law does not authorize them to borrow money, or provide for the apportionment of the cost of erecting buildings ; and therefore, the Act in question is not in violation of Constitution, Art. 3, sec. 33, which provides that the General Assembly shall pass no special law, in any case, for which provision has been made by an existing general law.

4th. That the Act is not repugnant to the Fourteenth Amendment of the Constitution of the United States, since the levy of taxes to pay for bonds lawfully issued by a municipality is not a taking of property without due process of law.

Appeal from the Circuit Court for Anne Arundel County. Under the Act of 1894, ch. 620, a building committee was appointed to purchase a lot in the city of Annapolis and erect thereon a public school building. Section 4 of the Act provided that for the purpose of paying for the same "the School Commissioners of Anne Arundel County are hereby authorized and directed to borrow, on the endorsement of the County Commissioners of Anne Arundel County, who are hereby authorized and directed to endorse said bonds on the credit of said county, an amount not exceeding the sum of twenty thousand dollars, * * * but said bonds shall not be issued * * * until the corporation of Annapolis has appropriated the sum of ten thousand dollars towards the purchase of said lot and the erection and furnishing of said building; * * * and the said city is hereby authorized and directed to issue bonds to the amount of ten thousand dollars to raise the money to appropriate to the payment of said public school building; provided, that the issue of said bonds on the part of the city of Annapolis shall be simultaneous with the issue of said bonds by Anne Arundel County, and that such issue of bonds by the city of Annapolis shall be issued by the said Mayor, Aldermen and Counsellor of Annapolis, without submitting the question of their issue to a vote of the citizens of Annapolis, all provisions of the charter of the said city of Annapolis to the contrary, notwithstanding."

The majority of the Building Committee filed a petition setting forth that the Mayor, &c., refused to issue said bonds without first submitting an ordinance to the qualified voters of the city, in order to ascertain if the same would be authorized, and praying for a writ of *mandamus* commanding the issue of the bonds. The answer of the municipality relied upon the charter of the city, Code Public Laws, Art. 2, sec. 37, which provides that the Mayor, etc., of Annapolis shall have power to issue bonds, provided that a majority of the legal voters of the city shall approve of the loan at an election to be held, &c. The answer further insisted that the Act is a special Act in a case for which provision is already made by general law, and, therefore, is in violation of the provisions of Article 3, section 33, of the Constitution; also, because "the imposition of taxes upon the taxpayers of the city of Annapolis for objects outside the chartered powers of the said corporation of Annapolis, without the appoval of a majority of the legal voters of said city, is unconstitutional and void, because the Legislature cannot legally require said city to subscribe money to, or issue bonds for any object outside the chartered powers of said corporation, and that the said corporation of the city of Annapolis, not having been erected for any educational purposes whatever, the said Act of 1894, chapter 620, attempting to compel it to subscribe and donate the sum of ten thousand dollars to a public school building is, therefore, unconstitutional and void." And further, because the issue of such bonds would lead to an unequal and ununiform tax in one part of a taxation district for school purposes. The petitioners demurred to the answer and from the order of the Court below (ROBERTS, C. J., and REVELL, J.), overruling the demurrer and dismissing the petition, this appeal was taken.

The cause was argued before ROBINSON, C. J., MCSHERRY, FOWLER and BRISCOE, JJ.

*John Prentiss Poe, Attorney-General*, and *Robert Moss* (with whom was *F. Eugene Wathen* on the brief), for the appellants.

The charter of Annapolis is in itself nothing but an Act of Assembly subject to repeal or amendment, and the provision in its charter directing a popular vote as a condition to the creation of a public debt, it is entirely within the power of the Legislature to rescind, alter or repeal altogether. Hence the Act in question must be treated as a repeal, for the purpose of this public improvement, of the existing provision in the charter requiring the approval of a majority of the qualified voters, such repeal being distinctly enacted by the same legislative authority which in the charter requires such popular vote. If it was within the power of the General Assembly to authorize the corporation of Annapolis to issue bonds for corporate purposes; provided, the majority of its qualified voters should first approve, it is quite as clearly within their power to authorize the issue of bonds without such *antecedent* approval. The consent of the voters is not necessary to the imposition of a tax. If it were conceded that the Legislature could only validly compel a municipal corporation to tax its people, without its consent, for a public *State* purpose, the Act under review would be clearly valid, for the establishment of public schools is a part of the system of public education.

The Act in question is clearly within the power of the General Assembly over municipal corporations and over the subject. *Mayor, &c., of Frederick*, 44 Md. 67 ; *Mayor, &c.*, v. *Groshon*, 30 Md. 436 ; *Talbot Co.* v. *Queen Anne's Co.*, 50 Md. 245 ; *Daly* v. *Morgan*, 69 Md. 460 ; *St. Mary's School* v. *Brown*, 45 Md. 333 ; *State* v. *Sterling*, 20 Md. 516; *State* v. *Mayhew*, 2 Gill, 487 ; *State* v. *Mayor, &c., of Baltimore*, 52 Md. 419 ; *Comrs. of Revenue* v. *State*, 45 Ala. 399 ; *Gordon* v. *Cornes*, 47 N. Y. 608 ; *County of Livingston* v. *Darlington*, 101 U. S. 407 ; *Grim* v. *Weissenberg, etc., District*, 57 Pa. St. 436 ; *Mayor of Cartersville* v. *Baker*, 73 Geo. 686 ; 2 *Dillon on Mun. Corp.* 831, *note.*

*Elihu S. Riley* (with whom was *Wm. Pinkney Whyte* on the brief), for the appellees.

A city cannot be compelled to issue bonds against its will, to provide funds for an object outside its powers. *Cooley's Constitutional Limitations,* 6th edition, pp. 285, 287 and note; *Cooley on Taxation,* ch. XXI; *Callam* v. *Saginaw,* 50 Mich. 7; *Supervisors of Livingston Co.* v. *Weider,* 64 Ill. 427; *Sleight* v. *People,* 74 Ill. 47; *Mather* v. *Ostend,* 114 Ill. 657; *Will Co. Sup.* v. *People,* 110 Ill. 511; *Hasbruck* v. *Milwaukee,* 13 Wis. 37; *Mills* v. *Charleston,* 29 Wis. 400; *People* v. *Batchellor,* 53 N. Y. 128; *East St. Louis* v. *Watts,* 59 Ill. 155; *Marshall* v. *Sellman,* 61 Ill. 218; *Barnes* v. *Lacon,* 84 Ill. 461; *People* v. *C. C. of Chicago,* 51 Ill. 58; *Livingstown* v. *Miles,* 53 Ill. 302; *People* v. *County,* 55 Ill. 33; *Miles* v. *East St. Louis,* 55 Ill. 133; *People* v. *Mayor, &c.,* 51 Ill. 17 to 31. *Contra* —45 Ala., p. 399, *President and Comrs.* v. *State.* This is the only case to be found in the reports.

In *Will Co. Suprvs.* v. *People,* 110 Ill., p. 511, it was held that a State law to tax towns and counties for building bridges, roads and highways, in which all the people of the State were interested, was unconstitutional. All the people of Anne Arundel are interested in this school house; it will be the property of the whole county, its deed and fee held in the name of the Board of County School Commissioners of Anne Arundel County; how, then, in law and equity, can the citizens of Annapolis be compelled to pay this large bonus to a school house in which all the people of the county are interested.

In *Jenkins* v. *Andover,* 103 Mass. 94, a statute permitting a town to tax itself for the benefit of a private incorporated academy was held invalid because the school was not under the control of the town authorities, "and outside its corporate powers." In *Lowell* v. *Boston,* 111 Mass. 473, where an Act of the Legislature, after a great fire, authorized Boston to issue bonds to loan to the sufferers, the Court said: "The expenditure authorized by the statute being for private and not

for public objects, it exceeds the constitutional power of the Legislature." Annapolis City will have, as a corporation, not one iota of control of this public school when built. It will be absolutely in the hands of another corporation. The charter of the city of Annapolis contains no provision requiring it to erect, maintain, repair or furnish public school houses, nor to perform any duties relating to public education. That duty is assigned to another corporation, "The School Commissioners of Anne Arundel County."

Act of 1894, ch. 620, is a special act where a general law exists. No clearer case of a violation of the constitutional inhibition, made in sec. 33, Art. 3, of the Constitution of Maryland, could be presented. Art. 77, sec. 2 of the Code, provides that "It shall be the duty of the Board of County School Commissioners to select a suitable school house site in each district, whenever the necessities of the public schools demand a change of site or sites already built upon or a new house to be built;" and the Constitution, sec. 33, Art. 3, says: "The General Assembly shall pass no special law for any case for which provision has been made by an existing general law." General law has provided for the selection of school house sites. The Act of 1894, chap. 620, selects a special committee to take this duty out of the hands of the proper authorities and act contrary to statute and organic law. See *Const. Law in Amer. & Eng. Ency. of Law*, p. 697. See 6th Md., p. 471, *Commrs. of Washington Co.* v. *Nesbitt*, where control of clerk over the Court House, under a special law, incompatible with the general law giving County Commissioners control of Court Houses.

The Legislature cannot compel a city to create a debt against its will. In the following cases legislative mandates were declared to be void: *People* v. *Mayor, &c.*, 51 Ill. 17; *People* v. *Common Council*, 51 Ill. 58; *Marshall* v. *Sellman*, 61 Ill. 218; *Callam* v. *Saginaw*, 50 Mich. 7. In *Hasbrouck* v. *Milwaukee*, 13 Wis. 37, approved and defended in

an able opinion, in *Mills* v. *Charleton*, 29 Wis. 400, the power of the Legislature to compel the city of Milwaukee to issue bonds and levy a tax for the improvement of its harbor, was distinctly denied. In *People* v. *Batcheller*, 53 N. Y. 128, the Court of Appeals denied the validity of a mandatory statute compelling a town to take stock in a railroad company, and to issue its bonds in exchange therefor. This opinion reviews prior decisions in the same State, and finds nothing in conflict with the views expressed.

"The principle of liability for taxes in proportion to actual worth in real and personal property, declared by the 13th Art. Dec. of Rights, *is a bar to double taxation*, and all legislative provisions for the assessment and collection of taxes should be so construed as to avoid that result?" *State* v. *Sterling*, 20 Md. 520. Can a double taxation for the same object—the public schools of Anne Arundel—be avoided in this case unless chap. 620, Acts of 1894, is declared void and unconstitutional? *State* v. *Cumb. & P. R. R. Co.*, 40th Md. 50 and 51 ; *Tyson et al.* v. *State*, 28 Md. 586 ; *Daly* v. *Morgan and others*, 69 Md. 460. In *Daly* v. *Morgan*, 69 Md. p. 460, this Court has laid down the broad and comprehensive doctrine that the taxes imposed by the State must be equal and uniform throughout the State, county, city or taxing district to which it applies."

Annapolis City is, for public school purposes, on which a separate tax is laid, in the county, in Anne Arundel County—a taxing district. It would, indeed, be revolting to justice for the County Commissioners to say that the first district of Anne Arundel County should pay ten cents school taxes, and Annapolis, the sixth district, fifteen ; and this law only indirectly does what directly would not be tolerated for a moment. If this Act is sustained, six of the seven districts of Anne Arundel County will pay twenty cents on the $100 for school purposes, and the tax-payers of Annapolis, the other district, towards the same objects, will pay twenty-eight cents on the $100, and this unequal rate will, with a slight decrease in the ratio of proportion,

continue until the debt is paid.   Is this "equal and uni-
form throughout * * * the taxing district?"

ROBINSON, C. J., delivered the opinion of the Court.

The Act of 1894, chapter 620, provides for the erection
of a public school building in the city of Annapolis, and to
pay for the same, it authorizes and directs the School Com-
missioners of Anne Arundel County to borrow money, not
exceeding the sum of twenty thousand dollars, on bonds,
to be endorsed by the County Commissioners.   And for
the same purpose it directs that the city of Annapolis shall
issue bonds to the amount of ten thousand dollars, and that
said bonds shall be issued without submitting the question
of their issue to the voters of said city.

The city of Annapolis has refused to issue the bonds as
thus directed by the Act, and the question is whether the
Legislature has the power to direct that the city authorities
shall issue bonds to raise money to be applied to the erec-
tion of a public school building in said city.

This power is denied on the broad ground that it is not
competent for the Legislature to compel a municipal cor-
poration to create a debt or levy a tax for a local purpose,
in which the State has no concern, or to assume a debt not
within the corporate powers of a municipal government.   If
the correctness of this general proposition be conceded for
the purposes of this case, we do not see how it affects, in
any manner, the validity of the Act now in question.   We
cannot agree that the erection of buildings necessary for
the public schools is a matter of merely local concern, in
which the State has no interest.   In this country the people
are not only in theory but in practice the source of all gov-
ernmental power, and the stability of free institutions mainly
rests upon an enlightened public opinion.   Fully recogniz-
ing this, the Constitution declares that it shall be the duty
of the Legislature "to establish throughout the State a
thorough and efficient system of free public schools, and
to provide by taxation or otherwise" for their maintenance

and support, Art. 8, sec. 1. And the Legislature has accordingly established a public school system, and has provided for its support by State and local taxation. It cannot be said, therefore, that the erection of buildings for public school purposes is a matter in which the State has no concern, nor can we agree that the creation of a debt for such purposes is not within the ordinary functions of municipal government. What is a municipal corporation? It is but a subordinate part of the State government, incorporated for public purposes, and clothed with special and limited powers of legislation in regard to its own local affairs. It has no inherent legislative power, and can exercise such powers only as have been expressly, or by fair implication, delegated to it by the Legislature. The control of highways and bridges within the corporate limits, the power to provide for an efficient police force, to pass all necessary laws and ordinances for the preservation of the health, safety and welfare of its people, and the power to provide for the support of its public schools by local taxation, are all among the ordinary powers delegated to municipal corporations. And the public schools in Baltimore City are not only under the control and supervision of the city authorities, but are mainly supported by municipal taxation. It is no answer to say that the public schools in Annapolis are under the control of the School Commissioners of Anne Arundel County, and that under its charter it has no power to create a debt or levy taxes for their support. The Legislature may, at its pleasure, alter, amend and enlarge its powers. It may authorize the city authorities to establish public schools within the corporate limits, and direct that bonds shall be issued to raise money for their support, payable at intervals during a series of years. There is no difference in principle between issuing bonds and the levying of a tax in one year sufficient to meet the necessary expenditure. It would be less burdensome to taxpayers to issue bonds payable at intervals than to levy a tax to raise ten thousand dollars in any one year. This, however, is a matter of detail within the dis-

cretion of the Legislature, and over which the Courts have no control.

If the Legislature has the power to direct the city authorities to create a debt for a public school building, the exercise of this power in no manner depends upon their consent or upon the consent of the qualified voters of the city. We recognize the force of the argument that the question whether a municipal debt is to be created ought to be left to the discretion and judgment of the people who are to bear the burden. We recognize, too, the fact that the exercise of this power by the Legislature may be liable to abuse. But the abuse of a power is no argument against its exercise. The remedy, however, in such cases, is with the people, to whom the members of the Legislature are responsible for the discharge of the trust committed to them. It is a matter over which the Courts have no control. If the debt to be created was for a *private purpose* that would present quite a different question, for it is a fundamental principle, inherent in the nature of taxation itself, that all burdens and taxes shall be levied for public and not for private purposes. Be that as it may, it is well-settled in this State that the Legislature has the power to compel a municipal corporation to levy a tax or incur a debt for a public purpose, and one within the ordinary functions of a municipal government.

In *Pumphrey's case*, 47 Md. 145, a *mandamus* was sued out to compel the Mayor and City Council of Baltimore to purchase a bridge over Gwynn's Falls, within the corporate limits, as directed by the Act of 1876; and the Court held that it was the duty of the city to build and keep in repair bridges over its highways; and that the Legislature had the power to compel it to buy a bridge already constructed.

And in *Mayor & C. C. of Balto.* v. *Reitz*, 50 Md. 574, it was decided that the Legislature had the power to compel the city authorities to acquire by comdemnation a lot of ground in said city to be used as a public square or park. Again in *County Comrs. of Talbot County* v. *County Comrs.*

*of Queen Anne's Co.* 50 Md. 245, it was held that the Legislature had the power to compel the Commissioners of Talbot County to levy a tax to pay one-half of the expense of building a bridge over " Kent Island narrows," and on the ground that the bridge was a public improvement of special interest and advantage to that county.

And we may here add that the case of the *Commissioners of Revenue*, 45 Alabama, 399, which was so much criticized in the argument and which is also critized by Judge Cooley, in his Constitutional Limitations, has, since the publication of the latter work, been confirmed without dissent by the Supreme Court. *County of Mobile* v. *Kimball*, 102 U. S. Rep. 691. In that case the Legislature of Alabama appointed a Board of Harbor Commissioners·for the purpose of deepening and improving the bay of Mobile, and directed that the Commissioners of Revenue for the county of Mobile should issue coupon bonds of the county and deliver the same to the Harbor Commissioners to be sold and the proceeds applied in payment of the expenditure. On application for a *mandamus* to compel the Commissioners of Revenue to issue the bonds, the Supreme Court held that the Act was a valid exercise of legislative power. Referring to the Act, Mr. Justice Field says : " Here the ob'ection urged is that it fastens upon one county the expense of an improvement for the benefit of the whole State. Assuming this to be so, it is not an objection which destroys its validity. When any public work is authorized, it rests with the Legislature, unless restricted by constitutional provisions, to determine in what manner the means to defray its cost shall be raised. It may apportion the burden ratably among all the counties, or other particular subdivisions of the State, or lay the greater share or the whole upon that county or portion of the State specially and immediately benefited."

To prevent any misapprehension, it may be as well to say that we do not mean to decide that it is competent for the Legislature to compel a municipal corporation to create a

debt or levy a tax for a public improvement in another portion of the State, without reference to any special benefit to be derived therefrom by the city. Nor do we mean to decide that it is competent for the Legislature to compel a municipal corporation to bear the expense of a public improvement to be used exclusively for State purposes. What we do decide is that the Legislature has the power to provide for the erection of a public school building in the city of Annapolis, and to direct that the city authorities shall issue bonds for the purpose of raising money to pay the cost of such building, and this too, with or without the consent of the voters of said city. It is quite unnecessary to consider the many cases referred to in the full and able argument of the counsel for the appellees, and in which the Courts of the several States have dealt with the question as to the power of the Legislature to compel a municipality to create debts or incur obligations for local purposes. All the cases agree that a municipal corporation cannot be compelled to incur a debt for a *private purpose*, and in some cases it has been decided that it cannot be compelled to create a debt for a local purpose, in which the State has no concern. As to the latter question, there is some conflict of opinion. We have been unable, however, to find a case which denies to the Legislature the power to compel a municipal corporation to incur a debt for the purpose of erecting a public school building within the city limits for the use of the public schools. Such an object being a *public object*, and one *strictly within the functions of municipal government*, there is no ground on which the exercise of such a power can be denied.

Objection was also made to the Act of 1894, because the Legislature had apportioned the cost of the building between the city of Annapolis and Anne Arundel County, of which the city is a part. There is nothing in the record to show that the apportionment is in any manner unequal or unjust to the city. If any objection is to be made to the Act on this ground, it would seem that the taxpayers of

Anne Arundel County are the persons to make the objection, for the reason that they are required to pay *two-thirds of the cost of the building*, whilst the city of Annapolis, which is *specially and directly interested in the improvement*, is required to pay but *one-third of the expenditure.* The apportionment, however, was, as we have said, a matter within the discretion and power of the Legislature. This was decided in the *County Commissioners of Talbot County*, 50 Md. 245, and also by the Supreme Court in *Mobile County* v. *Kimball*, 102 U. S. Rep. 691.

In closing his argument, the counsel for the appellees suggested that the Act was invalid, because it was in conflict with the Fourteenth Amendment of the Federal Constistution, which forbids the taking of "property without *due process of law.*" If invalid on this ground, it is invalid under the Constitution of this State, which provides the same safeguards for the protection of life, liberty and property, and which has been the fundamental law of this State from the beginning of the Government. It is a sufficient answer to this objection to say that the Act in question, which requires the city authorities to issue bonds to raise money to pay the cost of a public school building is a lawful exercise of legislative power, and this being so, taxes levied to pay such bonds are not open to the objection of taking property "without due process of law."

Nor can we agree that the Act is in conflict with sect. 33, Art. 3, of the Constitution, which declares that "the General Assembly shall pass no special law for any case for which provision has been made by an existing General Law." The General Law provides, it is true, that the School Commissioners of Anne Arundel County shall have the control and supervision of the public schools in said county, with power to build, repair and furnish school houses. But it does not authorize the Commissioners to borrow money upon bonds to be endorsed by the County Commissioners for such purposes, nor does it provide for the apportionment of the cost of a public school building to be erected

in the city of Annapolis, between the county and the city. This could only be done by special Act, and this being so, the special Act is not in conflict with the Constitution, which forbids the passing of a special Act for any purpose for which provision has been made by an existing General Law. It follows from what we have said that the judgment overruling the demurrer in this case must be reversed.

*Judgment Reversed.*

(Decided March 26th, 1895.)

