SALT LAKE COUNTY v. SALT LAKE CITY.

No. 2471.    Decided April 30, 1913 (134 Pac. 560.)

1. STATUTES—CLASSIFICATION OF COUNTIES. Laws 1907, c. 144, as amended by Laws 1909, c. 110, and Laws 1911, c. 54 (Comp. Laws 1907, sec. 720x42), providing that on recommendation of the juvenile court commission the board of county commissioners in all counties containing cities of the first and second class shall establish detention homes for delinquent children, and that such county may recover from the cities a reasonable sum for the support and maintenance of the delinquent children from such cities, does not violate Const. art. 11, sec. 4, providing that the legislature shall establish a system of county government uniform throughout the state, for the act has nothing to do with county government, but merely imposes upon the counties and municipalities one of the governmental duties of the state. (Page 553.)

2. STATUTES—SPECIAL LAWS—TAXATION—OFFICERS. Nor is the law in violation of Const. art. 6, sec. 26, subsecs. 8, 11, and 18, respectively, prohibiting the legislature from enacting special laws for the assessment of taxes, regulation of county and township affairs or the creation or increase of fees of officers, for the law in question in no way relates to those subjects, merely relating to a governmental duty of the state. (Page 554.)

3. STATUTES—DELEGATION OF AUTHORITY—WHAT CONSTITUTES. Neither is the law in violation of Const. art. 6, sec. 29, providing that the legislature shall not delegate to any special commission, corporation, or association any power to interfere with any municipal improvement, money, property, or effects, for the juvenile court commission in no way interferes with the municipality, and the law establishing the detention home merely imposes upon the municipality the performance as an arm of the state of part of the state's governmental duties. (Page 554.)

4. COUNTIES—MUNICIPAL CORPORATIONS—MUNICIPAL TAXATION— POWER OF STATE. Laws 1907, c. 144, as amended by Laws 1909, c. 110, and Laws 1911, c. 54 (Comp. Laws, secs. 720x42, 720x48), requiring counties containing first and second class cities to establish detention homes for delinquent children, and that the cities shall reimburse the counties for the reasonable expense in caring for delinquent city children, is not in violation of Const. art. 13, sec. 5, declaring that the legislature shall not impose taxes for the purpose of any county or municipal corporation, but may vest in the corporate authorities power to collect and assess taxes for all purposes of such corporation, since the law in question in no way violates the provisions for municipal self-government not applying to the city as a corporate body, but imposing upon it as an arm of the state some of the state's governmental functions.     (Page 555.)

5. MUNICIPAL CORPORATIONS—DISBURSEMENTS. As a municipal corporation is part of the county in which it is located, and the county supervisors are liable to the inhabitants of the corporation, Comp. Laws, secs. 720x42, 720x48, providing for the establishment by the county supervisors for detention homes for delinquent children and for payment by cities for the support of their own delinquent children, is not an interference with the taxing power of the cities in permitting their funds to be disbursed by irresponsible officials.     (Page 557.)

6. JUDGMENT—COLLATERAL ATTACK—JUVENILE COURTS. Under constitutional provisions expressly authorizing the legislature to create courts inferior to the Supreme Court, judgments of the juvenile court, although a court of special and limited jurisdiction, have the same effect as those of any other court, and a resident of a city which may become liable for the support of delinquent children cannot collaterally attack them on the ground that they affect his rights as a taxpayer.     (Page 558.)

7. CONSTITUTIONAL LAW—POWER OF JUDICIARY. The wisdom of laws providing for detention homes for delinquent children is for the legislature, and its determination cannot be interfered with.     (Page 558.)

STRAUP, J., dissenting.

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by Salt Lake County, a municipal corporation, against Salt Lake City a municipal corporation.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*H. J. Dininny,* City Attorney, and *P. J. Daly,* Assistant City Attorney, for appellant.

*I. E. Willey,* County Attorney and *C. M. Morris,* Assistant County Attorney, for respondent.

FRICK, J.

Salt Lake County, the respondent in this court, brought this action against Salt Lake City, the appellant here, to recover the cost of caring for, educating, and maintaining certain delinquent children who were ordered by the juvenile court to be sent to a detention home, hereafter referred to, maintained by the respondent. The action is based upon chapter 144 of the Laws of Utah, 1907, as amended by Laws, Utah 1909, p. 233, and Laws, Utah 1911 p. 76. The law of 1907 aforesaid was carried into the Compiled Laws of Utah 1907, and in that compilation constitutes sections 720x42 to 720x48, inclusive, with the exception of the amendment made in 1909 and in 1911 as aforesaid. The sections as they appear in the Compiled Laws of 1907, as amended, will be referred to in this opinion. Section 720x42, the initial section of the law as amended, in substance provides that upon the recommendation of the juvenile court commission the board of county commissioners in all counties of this state containing cities of the first and second class shall and in all counties may establish and maintain "detention homes, one for boys and one for girls not connected with any jail, which shall be in charge of a supervisor appointed

by the county commissioners upon the recommendation from the juvenile court having jurisdiction in the county where such home shall be established." It is further provided that instruction in branches similar to those in public schools in the counties and cities "up to and including the eighth grade, and in addition thereto manual training and arts for boys and domestic science for girls," shall be taught in said schools. And, further, "such detention homes shall be supplied with all necessary teachers, help and convenient facilities for the care and maintenance thereof." It is also provided in the same section that in lieu of teaching the branches referred to in the detention homes arrangements may be made by the superintendent of such schools, with the consent of the juvenile court commission, with the proper school board to send the inmates of such homes to the nearest or most convenient public school. In another section it is provided that the county commissioners may "secure by rental or purchase a building which shall be known as the detention school, or by any other name which may distinguish the home as a school." It is further provided that the county establishing and maintaining such detention school "shall be entitled to recover from the cities of the first and second class situated in said county such sum for the care, support and maintenance of such child as may be reasonable therefor, and in no case shall such sum be less than the per capita monthly or yearly amount of such expenses of the detention school in which the child is committed, or the actual expense incurred by the county for the care and maintenance of such child." Such cost to be paid monthly. It is further provided that in each county where a detention school is established the county commissioners shall set aside out of the county general fund the amount used for the detention home to be known as the detention school fund, and that "the expenses of any child cared for. in the detention school residing in cities of the first and the second class shall be paid out of the general fund of the city treasury in the same manner as provided for the payment of general city expenses." The county in its complaint in substance alleged the establishment and main-

tenance of a detention school by it; that a certain number of children, boys and girls under the age of sixteen years, residents of Salt Lake City, were by the order of the juvenile court of Salt Lake City and County sent to the detention school, the number of both boys and girls, and the time each boy and girl was detained and cared for in said school and the cost of caring for and maintaining them are stated, and that the cost of care and maintenance asked for in the complaint is reasonable. For some reason the counsel for appellant did not demur to or answer the complaint, but filed a motion for judgment "on the pleadings." In their motion the reasons why judgment was asked, in substance, were that the complaint was deficient in substance, and that the law upon which respondent relied for a recovery was unconstitutional. The district court treated the motion for judgment as a demurrer to the complaint, overruled the same, and appellant's counsel refusing to plead further, judgment was duly entered for the amount prayed for in the complaint, from which this appeal is prosecuted.

The errors assigned are that the court erred in overruling the motion as a demurrer and in entering judgment for respondent. Counsel for appellant contend in their brief, and contended upon oral argument, that the act or law authorizing respondent to collect from appellant is unconstitutional and void:

(1) Because it is in violation of article 11, section 4, of the Constitution of this state, which is as follows: "The legislature shall establish a system of county government, which shall be uniform throughout the state, and by general laws shall provide for precinct and township organizations."

(2) Because the law offends against subdivisions 8, 11, and 18 of section 26 of article 6 of said instrument. Section 26 aforesaid, so far as material here, provides: "The legislature is prohibited from enacting any private or special laws in the following cases: . . . (8) Assessing and collecting taxes. . . . (11) Regulating county and township affairs. . . . (18) Creating, increasing or decreasing fees, percentages or allowances of public officers dur-

ing the term for which said officers are elected or appointed."

(3) Because said law is violative of article 6, section 29, of the Constitution, which reads as follows:

"The legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, to select a capitol site, or to perform any municipal functions."

(4) Because the law contravenes article 13, section 5, of the Constitution, which provides: "The legislature shall not impose taxes for the purpose of any county, city, town or other municipal corporation, but may, by law, vest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation."

Recurring now to the first reason given by counsel why the law in question is void, we confess our entire inability to see upon what ground any part of the law can be said to be violative of anything said or necessarily implied in the section of the Constitution first quoted above. What has the law in question to do with county government? In what way does it make the government of Salt Lake County different from that of the government of any other county in the state? True, the law imposes some duties upon the county commissioners of Salt Lake County and some burdens upon the taxpayers of Salt Lake City, the most populous city in the state, that are not imposed upon the county commissioners or taxpayers of San Juan, the least populous county in the state. But in doing that the law in no way produces a difference in the form of the county governments of the two counties. The differences produced are entirely due to the difference in density of population and matters incidental thereto. In San Juan County where there are, comparatively speaking, only a few people, a detention school may neither be necessary nor practical, while in Salt Lake County, with a population of about 140,000, such a school may be both practical and necessary. The establishment of such schools is a function of state, and not of

local, government, unless the local government is authorized to exercise the function by the state government. The state government, in the discharge of its functions, may, however, classify the counties and cities of the state and may, for the purpose of augmenting the public good and welfare, treat both counties and cities as state agencies, and may even impose additional duties upon their officers or additional burdens upon the residents and taxpayers, and especially so when the latter have a special as well as a general interest in the thing the state is seeking to effectuate for the public good. The law relating to this subject, as we shall see, is well settled; but such efforts on the part of the state have no relation to or effect upon the constitutional provision providing for uniform county governments.

Nor do the matters stated by counsel in their second reason in any way relate to the subject covered by the law in question. What is sought to be accomplished by that law does not relate to the assessment or collection of taxes; nor does it regulate or attempt to regulate county or township officers. Neither does it create, increase, or diminish fees, percentages, or allowances of public officers during their term of office within the purview of that provision. No further comment upon the reason just referred to is necessary.

Neither is the constitutional provision set forth in counsel's third reason in any way violated or affected by the law in question. Nothing in the law can be so construed or applied as to affect any municipal property or function. What is required from Salt Lake City is required from it as an arm or agency of the state government, and in no way affects or interferes with any of its functions as a municipal corporation governing its own local affairs. Salt Lake City as a corporate body is in no way interested in the moral welfare of the delinquent children provided for in the juvenile court law of this state, but the people who live within the City of Salt Lake as well as those who reside elsewhere within the state are interested, and by reason of that fact the people of the state, through their government, may

act in such matters and call upon both counties and cities as state agencies to assist the state in its effort to protect and enhance the educational and moral welfare of delinquent children under a certain age.

This brings us to the last reason urged, namely, that the law offends against article 13, section 5, of the Constitution. It is contended that by section 5 aforesaid local self-government is guaranteed, and that the principle underlying such government is violated in spirit if not in fact by the law in question. We cannot see in what way either the letter or the spirit of what is said in section 5 aforesaid is violated or invaded by anything contained in the law now under consideration. Much that we have already said is applicable as an answer to counsel's latter contention. The Constitution of the state of Missouri contains a provision, if not in letter, yet in effect precisely like the one found in section 5 of article 13 aforesaid. (See Const. of Mo., art. 10, sec. 10.) The Supreme Court of Missouri, in the case of *State v. Owsley,* 122 Mo. 68-78, 26 S. W. 659, squarely held that the legislature in case in its judgment the public good or welfare requires it, may call upon counties or cities as state agencies to assist the state in paying the expenses incurred for the public good. In a later case—*Ex parte Loving,* 178 Mo. 194-221, 77 S. W. 508—the same court applies the doctrine to expenses incurred in caring for juvenile delinquents. The constitutional objections, as well as counsel's arguments upon other grounds, are all taken up, considered, and answered by the Supreme Court of Missouri in that case to our entire satisfaction. It would almost be a work of supererogation to attempt to enlarge upon the reasoning of that court. We refer counsel to that case. In that case the demarcation between the rights of the state and those of local governments with regard to matters affecting the public good is clearly pointed out. The following cases and authorities are to the same effect: *State v. Haworth,* 122 Ind. 462, 23 N. E. 946, 7 L. R. A. 240; Gray, Lim. Taxing Power, etc., secs. 630, 639; *Revell v. Annapolis,* 81 Md. 1, 31 Atl. 695; *Supervisors v. People,*

110 Ill. 511; *State v. Freeman,* 61 Kan. 90, 58 Pac. 959, 47 L. R. A. 67. In 1 Dillon, Mun. Corps. (5th Ed.) p, 118, it is said:

"There are governmental powers the just exercise of which is essential to happiness and well-being of the people of a particular city, yet which are not of a character essentially appertaining to the city government. Such powers the state may reserve to be exercised by itself, or it may delegate them to the city, but until so delegated they are reserved."

When the power, as in this case, is one which pertains to sovereignty, it will not be assumed to have been delegated, unless such delegation is made in express terms; and where it is delegated by the legislature and not in the Constitution it may be withdrawn by the Legislature at any time. The legislature in exercising sovereign powers of the state in our judgment had the right to require both Salt Lake County and Salt Lake City to each draw upon its general fund to defray the expenses of caring for and educating delinquent children who became wards of the juvenile court, and in one sense of the state, by having been adjudged delinquents by that court as residents respectively of the county or city. Upon this subject the law is tersely stated by Mr. Smith in volume 1 of the Modern Law of Mun. Corps. section 758, in the following words:

"The power of appropriation which a legislature can exercise over the revenues of the state for any purpose, which it may regard as calculated to promote the public good, it can exercise over the revenues of a county, city, or town, for any purpose connected with the present or past condition, except as such revenues may by the law creating them be devoted to special purposes."

A large number of cases are cited by the author in support of the doctrine just quoted, which are collated in a footnote, to which we refer the reader. No attempt was made by the legislature passing the law in question to appropriate any funds that were by law devoted to a special purpose, but all that was attempted is to require the proper officials of the county and city to draw upon the general fund belonging to

each.   Every one who is at all conversant with the purpose of a general fund knows that it is not devoted to any special purpose.   The doctrine is concretely applied by the Supreme Court of Maryland in the case of *Revell v. Annapolis, supra,* where the legislature required the county and the city each to contribute one-half the cost of erecting a public school. The right of the legislature to do so was assailed upon much the same grounds that are raised here, but the court, and we think properly, sustained the legislative act.   Why may not the state in furtherance of the public welfare draw upon its agencies for aid and assistance?   Is not the moral and intellectual welfare of children a matter of the highest concern of any government, whether state or national?   If there is a matter which concerns and in some respects affects all the citizens of a state, it certainly is the moral and educational welfare of indigent and delinquent children.   We cannot conceive how a government can exercise its sovereign prerogatives for a higher or better purpose and one more calculated to advance the general or public good or welfare than to protect, care for, and educate the indigent and delinquent children who in a short time may be called on to assume and discharge the duties of citizenship.

Counsel for the city also insist that the law in question interferes with the taxing power of the city, and permits its funds to be disbursed by what they are pleased to call irresponsible officials, reference being made to the county commissioners and the juvenile court officials.   We think that we have already made clear that the purpose to which the fund in question is sought to be applied is for the general public good, and not for a private purpose; that such purpose is not one which pertains to the corporate powers or interests of Salt Lake City.   This being so, no corporate rights of the city as such are either invaded or disregarded.   In this connection counsel overlook the fact that the money, under the law, is not disbursed by officials who are not responsible to the citizens of Salt Lake City. Salt Lake City, with all of its inhabitants and all of the property within its limits, is still within and a part of Salt Lake

County both for the purpose of taxation and representation. Every voter in Salt Lake City has the same right and is given the same opportunity to cast his vote for the county commissioners as he has to cast it for any elective city official. The county commissioners, when acting officially, are therefore responsible to the voters who reside within the city precisely the same as they are to those living outside of it in the county at large. Nor can it be said that the juvenile court officials come within counsel's characterization. Moreover, they are not authorized to disburse any of the fund and are not doing so.

While it is true that the juvenile court is a creature of the legislature, yet it is created by express constitutional authority. The Constitution expressly authorizes the legislature to create courts inferior to the Supreme Court. That the juvenile court is created for a special purpose with special and limited jurisdiction makes no difference. Whenever acting within the powers conferred upon it, its acts and judgments are the same as those of any other court. Can a resident of a city object every time a district court, or any other court of competent jurisdiction, enters     **6, 7** a judgment in a public matter which in some way affects or may affect some fund of the city to which he contributes as a taxpayer upon the ground that the judgment either directly or indirectly invades the right of local self-government or taxation? The state as we have already pointed out, in enacting the law in question, simply calls upon its agencies, the counties, and cities to assist in discharging a public duty which in no way affects local self-government. Whether in discharging public duties such as the one attempted to be discharged through the law in question the state legislature has acted wisely or in a manner which reflects exact justice upon all concerned is not for courts to determine. In what is attempted here the state acts in its sovereign political capacity; and, unless the law through which it acts is manifestly in violation of some express constitutional provision, the courts have no right to interfere. The only question for the courts is, Is the state acting within its rights?

If it is, then the courts may not interfere with, much less control, the exercise of the right, although it may be made to appear that the legislature, in the exercise of the right, has committed a grave error of judgment. But we cannot see wherein the legislature has inflicted any serious injustice upon the taxpayers of Salt Lake City by compelling them to pay for the cost of caring for and educating the delinquent children living within the city who are ordered by the juvenile court to be sent to the detention home maintained by the county. The cost of establishing and maintaining the detention homes under the law in question is paid for out of the general fund of the county. To that fund every taxpayer of the county, whether his property is within the city or within the county at large, contributes. If there is any injustice, therefore, it consists in compelling the taxpayer within the city to contribute out of the general fund of the city to defray the total expense of caring for and educating the children residing within the city. If there are only a small number of children who go to these detention homes from the county at large, the injustice is negligible. If, however, it should turn out that a large number of children are sent from the county at large and the county defrays their expenses out of the county general fund, then, of course, the taxpayer within the city contributes to that general fund for the benefit of the children sent from the county at large, while he is also compelled to defray the expenses of those sent from the city as well. But, as already said, that is a matter peculiarly within the powers of the legislature, and not within those of the courts. The legislature has seen fit to adopt that method in discharging a public duty and one in which every taxpayer of the state is interested; and, if that method be unjust, the power to correct the evil is with the legislature. Moreover, it ofter happens that a developing and growing commonwealth like the state of Utah is compelled to have recourse to temporary expedients to meet the emergencies arising in different counties of the state when such conditions are in a progressive but different state of development. Courts, therefore, should be very slow and cautious in interfering

with the state in its attempts to exercise its sovereign powers and in discharging its duties, and in so doing calls upon some of its agencies for assistance.

Although it has already been intimated in this opinion, yet, in order to avoid all misconception, we desire to repeat in terms that our conclusions are based upon the express holding that the interference here involved, under the law in question, is not an interference with any corporate right or function of city government. Whenever the legislature undertakes to invade such rights or functions, it will be time enough to stay the hands of the invader. The constitutional powers relied on by the city were intended to protect such rights and not those governmental rights which belong to the state alone, unless clearly surrendered as we have pointed out herein.

The judgment should be, and it accordingly is, affirmed, with costs to respondent.

McCARTY, C. J., concurs.

STRAUP, J.

I dissent. The act provides that upon the recommendation of the juvenile court commission (consisting of the Governor, Attorney-General, and state superintendent of public instruction) the county commissioners of counties containing cities of the first and second class shall maintain detention homes, one for boys and one for girls, not connected with any jail, to be in charge of a superintendent appointed by the county commissioners upon the recommendation of the juvenile court. When such recommendation is made, such county commissioners are required to provide the inmates of such homes with suitable instruction, to employ teachers, help and employees, "in like manner as the superintendent," and to supply convenient facilities for the care, maintenance, and education of the inmates. All salaries, costs, and expenses incurred in connection therewith shall be paid by the county commissioners out of the general funds of the county, and the commissioners are required to set apart from the general fund of the county an amount sufficient for such pur-

pose. It also provides that the county commissioners of other counties (not containing cities of the first and second class) may establish and maintain detention homes; that a delinquent child residing in a county not maintaining a detention home may be sentenced to a detention home in a county where such a home is maintained, but "the county maintaining such home may charge the county from which such delinquent child is sent a reasonable sum not to exceed fifty cents per day for the support and maintenance of such child." Then it further is provided that "the county establishing and maintaining such detention school shall be entitled to recover from the cities of the first and of the second class situated in said county such sum for the care, support, and maintenance of such child, as may be reasonable therefor." It further is provided that "the expenses of any child cared for in the detention school, residing in cities of the first and of the second class, shall be paid out of the general fund of the city treasury, in the same manner as provided for the payment of general city expenses."

Our Constitution has preserved to counties and municipalities the right of local self-government. It requires the legislature to establish a system of county government which shall be uniform throughout the state, prohibits the legislature by private or special laws from assessing or collecting taxes, regulating county and township affairs, and absolutely prohibits it from imposing "taxes for the purpose of any county, city, town or other municipal corporation, but may by law, vest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation," and also expressly prohibits it from delegating "to any special commission, . . . any power to make, supervise or interfere with any municipal improvement, money, property or effects, . . . to levy taxes, . . . or to perform any municipal functions." Here unquestionably the legislature has delegated to a special commission the power to require detention homes to be established, maintained, and equipped, and to create and incur obliga-

tions and liabilities in connection therewith, against both the county and cities affected, to be paid out of general funds of the county and city. Neither the county nor the city has any voice in the selection or appointment of the commission, nor in determining whether detention homes shall or shall not be established, or whether the obligations and liabilities connected therewith shall or shall nor be created or incurred. I think that is expressly prohibited. (*State ex rel. Wright v. Standford*, 24 Utah, 148, 66 Pac. 1061.) Under our Constitution both counties and municipalities have the right to administer and regulate their own affairs, to select their own officers, to incur their own debts, and to create their own obligations and liabilities. The Constitution further forbids any municipal debt in excess of the taxes of the current year, unless the proposition to create such debt be submitted to a vote. Here, debts, regardless of the constitutional inhibition, are created against the city by the juvenile court commission and the county commissioners, and are required to be paid out of the general funds of the city in the same manner as provided for the payment of general city expenses, and with respect to which the city is given no voice, control, or management whatever. The act permits the juvenile court commission, without the voice or consent of the county commissioners, to reach into the county treasury, and, in turn, requires the county commissioners, without the voice or consent of the municipality, to reach into the city treasury. Yet are we told this is not within the constitutional inhibitions forbidding the delegation of a power to a special commission to "supervise or interfere" with any "municipal money, property, or effects," or "to perform any municipal function," nor is it imposing a tax "for the purpose of any county, city or town." If it is not imposing a tax, it is because the legislature has given the commission—this special commission—a short cut to the county treasury; the power to create a liability against the county, and to require it to be paid out of county funds without going through the formalities of levying, assessing, and collecting taxes. For the act conferring the power on the special commission to create

the liability by the most imperative language requires the county commissioners to set aside from the general fund of the county an amount sufficient to meet it; and this, too, regardless of all questions relating to the sufficiency of the fund to meet other claims and demands against the county, or the purposes for which taxes were levied and collected comprising the general fund. And, in turn, the county commissioners shall demand the city to reimburse the county, and compel it to reach into its treasury and pay "out of the general fund of the city treasury" such sum as may be "reasonable" for the care, support, and maintenance of children from the city, again regardless of all other claims and demands against the city and purposes for which taxes were levied and collected composing the general fund. Thus, it is believed, since the Constitution forbids the legislature from imposing taxes for the purpose of any county, city or town, such inhibition is not transgressed by going direct to the county and city treasuries and compelling its officers to reach in and deliver over. But it is said all this is not for purposes of the county or the city; it is for public good, for the state. I see no more authority for the legislature to confer powers upon a special commission to directly or indirectly march upon a county or city treasury for public good or for the state than for county or city purposes. I think this case is controlled and ought to be ruled by *State ex rel. Wright v. Standford, supra.* There many of the constitutional provisions here drawn in question are considered and applied. In addition to that, the priniciples announced in the following cases also make against the validity of this act: *State v. Mayor, etc., of Des Moines,* 103 Iowa, 76, 72 N. W. 639, 39 L. R. A. 285, 64 Am. St. Rep. 157; *People v. Mayor,* 51 Ill. 17, 2 Am. Rep. 278; *Hinze v. People,* 92 Ill. 406.

How the legislature may have thought the constitutional provisions referred to would not be transgressed by declaring that the county commissioners "upon the recommendation of the juvenile court commission" shall establish detention homes, shall equip them, shall provide and supply convenient facilities for the care, support, and maintenance of the in-

mates, shall appoint a superintendent, teachers, help, and employees is somewhat difficult of comprehension. What less is it than though the juvenile court commission had been given power itself to establish, maintain, and equip detention homes, to provide and supply all facilities for the care, support, and maintenance of the inmates, and to require the county to pay all necessary costs and expenses in connection therewith? If that can be done, then why may not a special commission be authorized to establish, maintain, equip, etc., county and city jails, fire, and police departments with necessary buildings, equipments, etc., high schools, etc., and require counties and cities to pay all necessary costs and expenses? If the one is not within the constitutional inhibition why is the other?

This is a most peculiar statute. At the recommendation of the juvenile court commission, the commissioners of counties containing cities of the first class (there is but one in the state, Salt Lake City) and the second class are compelled to establish and maintain detention homes, and to equip them, and supply facilities for the support, maintenance, and education of the inmates. No other counties of the state need maintain them. Nevertheless, the act provides that a delinquent child residing in a county not maintaining such a home may be sentenced to a home in a county where such a home is maintained and the county maintaining such a home is compelled to receive it. But, says the act, no more than fifty cents a day can be charged for the care, support, and maintenance of such child, though the actual cost and expenses may exceed that amount. When, however, a child of a city of the first or second class in a county in which such home is maintained is sent to such a home, the county may recover from such city such sum as may be reasonable, though it exceed the actual cost. Thus Salt Lake County, at the recommendation of the juvenile court commission, is compelled to establish, maintain, and equip detention homes, and is obliged to receive a delinquent child from any county in the state not maintaining such a home, but can only charge fifty cents a day for its care, support, and main-

tenance; but, when it receives a delinquent child from Salt Lake City, the county must charge the city a reasonable sum. So what the county may lose in caring for delinquent children received from other counties, of from the county outside of Salt Lake City, it may, in a way, recoup itself by charging a greater sum for the care and support of children received from Salt Lake City. Had, therefore, these children come from another county, Salt Lake County could have charged not to exceed fifty cents per day for each child, but coming, as they do, from Salt Lake City, a charge is made of eighty-five cents per day for each girl, and fifty-five cents for each boy, which is alleged to be reasonable, and assuming that to be true, which on demurrer must be so assumed, the inequality and discrimination is apparent. The power and duty is expressly conferred upon municipalities to themselves provide for the safe-keeping and education of children who are destitute of parental care, and they ought to be permitted to themselves discharge such duties, instead of requiring others to do so and withholding from municipalities all voice in the matter, except to foot the bills.

I cannot yield assent to a statute which breaks in upon the Constitution in as many places as does this, and therefore dissent.