**SALT LAKE CITY, a Utah Municipal Corporation, et al., Plaintiffs and Respondents,**

v.

**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCALS 1645, 593, 1654, and 2064, Defendants and Appellants.**

No. 14689.

Supreme Court of Utah.

April 25, 1977.

---

Jerry W. James, of Irvine, Smith & Mabey, Salt Lake City, for defendants and appellants.

Roger F. Cutler, Salt Lake City Atty., Salt Lake City, Glen J. Ellis, Provo City Atty., Provo, Jack A. Richards, Ogden City Atty., Ogden, Merrill G. Hansen, Murray City Atty., Murray, J. Blaine Zollinger, Logan City Atty., Logan, for plaintiffs and respondents.

MAUGHAN, Justice:

Plaintiff, a municipal corporation, brought this declaratory judgment action to challenge the constitutionality of the Utah Fire Fighters' Negotiation Act, Chap. 20a, Title 34, U.C.A. 1953, as enacted 1975. Both parties moved for summary judgment; plaintiff prevailed.

The trial court held the act provided for an unconstitutional delegation of legislative power, and created a commission to perform municipal functions; contrary to Article VI, Sec. 28, Constitution of Utah. It further ruled the provisions for binding arbitration were not severable from the act as a whole. Defendants appeal. We affirm on grounds one and three. No costs awarded.

The act consists of ten brief sections. It grants full-time firemen, employed in any city, town, or county, the right to organize, for the purpose of bargaining collectively with the corporate authorities concerning wages, hours, and other conditions of employment. The corporate authorities are required to bargain in good faith with the exclusive bargaining representatives selected by the majority of fire fighters. If the two parties are unable to reach an agreement within thirty days after negotiations, the act requires all unresolved issues to be submitted to arbitration. Each party selects one individual to serve as an arbitrator; these two select the third arbitrator, from a list of seven provided by the Federal Mediation and Conciliation Service. This person acts as chairman of the panel. The determination of the majority of this panel is declared by the act to be final and binding on all matters in dispute, except salary or wage matters. As to these matters, the determination is advisory only.

On appeal defendants contend the act does not violate Article VI, Sec. 28, Constitution of Utah, for the reason the arbitration panel does not perform a municipal function.[1]

Is the organization, control, and management of a fire department a municipal or state affair?

The constitutional interdiction of Article VI, Sec. 28, would not prevent the legislature from authorizing the performance of activities, which legally qualify as a function appropriately performed by a state agency.[2] If fire protection be a state affair, the legislature may delegate the administration and control of fire departments to units of local government in their capacity as arms or agencies of the state.

. . . The state government, in discharge of its functions, may, . . . classify the counties and cities of the state and may, for the purpose of augmenting the public good and welfare, treat both counties and cities as state agencies, and may even impose additional duties upon their officers or additional burdens upon the residents and taxpayers, and especially so when the latter have a special as well as a general interest in the thing the state is seeking to effectuate for the public good. . . .[3]

The legislature has delegated to the cities, as agents of the state, the option to create, support, maintain, and control fire departments, Secs. 10–6–61, 10–6–62, 10–8–55, U.C.A. 1953. By conferring upon cities the right to perform a state affair, the matter is not converted into a municipal function, over which the state has constitutionally relinquished control. The state may withdraw or modify that portion of its power, which it has conferred.

Legislative control of municipal fire departments has been recognized in some states under the theory that fire protection is not a matter of purely local concern but a matter of interest to the entire state.[4] This concept is illustrated in *Axberg v. City of Lincoln*,[5] wherein it was observed that if a fire department be deemed purely a matter

1. "The Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, to select a capitol site, or to perform any municipal functions."

2. *Tribe v. Salt Lake City Corporation*, Utah, 540 P.2d 499 (1975).

3. *Salt Lake County v. Salt Lake City*, 42 Utah 548, 554, 134 P. 560, 563 (1913).

4. 16 McQuillin, Municipal Corporations (1972 Rev. Vol.) § 45.01, p. 562.

5. Neb., 141 Neb. 55, 2 N.W.2d 613 (1942).

of local self-government, it could be impaired or abolished and the state would be unable to interfere. Police and fire protection are essential to the administration of state government, which has the duty to protect and defend the rights of its citizens to life, liberty, and property. ✓The duty of the state cannot be circumscribed by city limits, particularly where uniform state action may often be required. Police, fire, and health protection are matters of statewide concern.

▮ The exercise of the police power is an attribute of state sovereignty, a portion of which it may delegate, but not relinquish, to municipalities, which have none of the elements of sovereignty.[6] Since fire protection is a state affair, the legislature may withdraw its delegation of power to municipalities to determine the wages, hours, and other conditions of employment of fire fighters, and such action does not constitute an interference with a municipal function.

After withdrawing the power from the elected officials of the municipality, may the legislature delegate unlimited discretion to an ad hoc panel of private persons to make basic governmental policy?

Under the act, section 3 specifies wages, hours, and other conditions of employment as subject for negotiation. Section 6 requires a notice of 120 days, whenever wages, rates of pay, "or *any other matter requiring appropriation of money*" are included as a matter of collective bargaining. The determination of the panel is *final* and *binding* on *all matters* in dispute except in salary and wage matters.

The term "conditions of employment" has been interpreted broadly to include residency requirements, retirement plans, workloads, work rules, management-right clauses, and safety. In turn, to assure the safety of fire fighters, a determination may include the number of men to be on duty at a particular time, the number of men assigned to each type of equipment, and the type of fire fighting equipment to be used.[7]

▮ Thus, the act authorizes the appointment of arbitrators, who are private citizens with no responsibility to the public, to make binding determinations affecting the quantity, quality, and cost of an essential public service. The legislature may not surrender its legislative authority to a body wherein the public interest is subjected to the interest of a group which may be antagonistic to the public interest.[8]

Although it is not dispositive of the delegation issue, in this case the legislature failed to provide any statutory standards in the act or any protection against arbitrariness, such as, hearings with procedural safeguards, legislative supervision, and judicial review.[9]

Is the act constitutional? No.

. . . The arbitrator/chairman of the panel is entrusted with the authority to decide major questions of public policy concerning the conditions of public employment, the levels and standards of public services and the allocation of public revenues. Those questions are legislative and political, not judicial or quasijudicial. The act is structured to insulate the arbitrator/chairman's decision from review in the political process. It is not intended that he be, nor is he in fact, accountable within the political process for his decision. This is not consonant with the constitutional exercise of political power in a representative democracy.[10]

**6.** *Bohn v. Salt Lake City,* 79 Utah 121, 8 P.2d 591 (1932).

**7.** *Dearborn Fire Fighters Union v. City of Dearborn,* 394 Mich. 229, 231 N.W.2d 226, 239–240 (1975).

**8.** *Revne v. Trade Commission,* 113 Utah 155, 192 P.2d 563 (1948); *Union Trust Co. v. Simmons,* 116 Utah 422, 211 P.2d 190 (1949).

**9.** See *Lloyd A. Fry Company v. Utah Air Conservation Committee,* Utah, 545 P.2d 495 (1975).

**10.** *Dearborn Fire Fighters Union v. City of Dearborn,* note 7, supra, at p. 228 of 231 N.W.2d.

Article VI, Sec. 1, Constitution of Utah, provides the legislative power of this state is vested in a Senate and House of Representatives.

Although the old delegation doctrine has been repudiated, there remains an underlying core of validity, which requires those who have been selected, by a given process, and from a given constituency; retain the power to make ultimate policy decisions and override decisions made by others.[11] The complexities of budgeting and the selection of programs, are duties elected officials owe to the electorate; these policy decisions cannot be delegated to a private ad hoc panel of arbitrators in violation of Article VI, Sec. 1.

Article I, Sec. 2, Constitution of Utah, provides:

All political power is inherent in the people; and all free governments are founded on their authority for their equal protection and benefit, and they have the right to alter or reform their government as the public welfare may require.

The power conferred on the panel of arbitrators is not consonant with the concept of representative democracy. The political power, which the people possess under Article I, Sec. 2, and which they confer on their elected representatives is to be exercised by persons responsible and accountable to the people—not independent of them. The act is designed to insulate the decision-making process and the results from accountability within the political process; therefore, it is not an appropriate means of resolving legislative-political issues.[12]

The decision of the panel affects the allocation of public resources, the level of public services provided, and the costs of government and consequently may necessitate an increase in taxes. Such decisions are legislative-political.

. . . It would be an enormous departure from present concepts of responsible exercise of governmental power if the practice were to develop of resolving difficult political issues in an arbitrator's conference room as an alternative to facing up to vexing problems in the halls of state and local legislatures.[13]

We fully concur with the following assessment of Justice Levin in the Dearborn Fire Fighters case:

It is the unique method of appointment, requiring independent decision makers without accountability to a governmental appointing authority, and the unique dispersal of decision-making power among numerous *ad hoc* decision makers, only temporarily in office, precluding assessment of responsibility for the consequences of their decisions on the level of public services, the allocation of public resources and the cost of government, which renders invalid this particular delegation of legislative power.[14]

Defendants also rely on Art. XVI, Sec. 8, Constitution of Utah.[15] This provision was adopted November 7, 1933. In the depths of the great depression this section was designed to allow amelioration of conditions of labor, reeling from severe economic dislocations. It was not designed to withdraw the right to representative government from the people, in the process.

It is to be noted the section is directed specifically to labor problems. In the instant matter we do not have a *labor* problem, as such. We deal here with a problem which involves a fundamental governmental function. All governmental functions involve human effort; labor, if you will;

11. Id. at p. 231 of 231 N.W.2d.

12. Id. at pp. 235–236 of 231 N.W.2d.

13. Id. at p. 240 of 231 N.W.2d.

14. Id. at p. 241 of 231 N.W.2d.

15. "The legislature may, by appropriate legislation provide for the establishment of a minimum wage for women and minors and may

provide for the comfort, safety and general welfare of any and all employees. No provision of this Constitution shall be construed as a limitation upon the authority of the legislature to confer upon any commission now on [sic] hereafter created such power and authority as the legislature may deem requisite to carry out the provisions of this section."

but, because of that these necessary functions are not converted into labor problems.

Defendants further contend the provisions concerning arbitration are severable from the remainder of the act, and the trial court erred in declaring the entire act unconstitutional.

 Severability, where part of an act is unconstitutional, is primarily a matter of legislative intent. Even though a savings clause exists (Section 10), where the provisions are interrelated, it is not within the scope of the court's function to select the valid portions of the act and make conjecture the legislature intended they should stand independent of the portions which are invalid.[16]

 The act is sequential in nature, commencing with negotiations concerning specific subject matter and culminating in arbitration of all unresolved issues. The provisions for arbitration are an integral part of the act, which cannot be severed without interfering with the underlying legislative purpose, viz., the resolution of employment disputes. The concept of binding arbitration is wholly interdependent with the other provisions of the act.[17]

WILKINS and HALL, JJ., concur.

ELLETT, C. J., concurs in result.

CROCKETT, Justice (concurring specially):

I concur in affirming the decision that the act is unconstitutional. But, I hope that from the discussion in the main opinion about the differences between state and municipal functions there is no implication that the prohibition of Section 28, Article VI of our Constitution[1] would be any less applicable to the state than to a city. I do not see in the language of Section 28 of Article VI any basis for making any differentiation between the operation and control of a fire department as a state affair, or a municipal affair.

Dictionaries all indicate that the term "municipal" has two meanings: (a) it is sometimes used to refer to a city, or other subdivision of government, and the operations thereof; and (b) it has a more general meaning, relating to the public affairs of the state or nation. Under the rule of interpretation, noscitur a sociis, which teaches that terms should be understood in the light of and take character from the associated terms,[2] it seems obvious to me that when the framers of our constitution spoke of ". . . to levy taxes, to select a capitol site, or to perform any municipal functions" they were using the term municipal in the broader sense, (b) above, viz., as a public function.

In accordance with what has been said above, I think it is important to point out that the prohibition of that section against delegating "to any special commission, private corporation or association . . . to perform any municipal functions" is stated in plain and all inclusive terms; and to my mind, it neither directly or by implication states or suggests that there is any difference if the function is a "municipal affair, or state affair."

There is a further difficulty with this enactment in that it purports to force arbitration upon the parties and to make it final and binding. This presumes to deprive an aggrieved party of access to the courts, contrary to the assurance of Section 11, Article I, Utah State Constitution. This is especially objectionable when the effect is to surrender the public interest to such a commission, which is impervious to accountability to the public.[3]

---

**16.** *Carter v. Beaver County Service Area No. One,* 16 Utah 2d 280, 399 P.2d 440 (1965).

**17.** *City of Sioux Falls v. Sioux Falls Fire Fighters,* S.D., 234 N.W.2d 35 (1975).

**1.** Footnote 1, main opinion.

**2.** Sutherland Statutory Construction 3rd Ed. 393, 66 C.J.S. p. 608, *Heathman v. Giles,* 13 Utah 2d 368, 374 P.2d 839.

**3.** See discussion of this problem in *Barnhart v. Civil Service Employees Insurance Co.,* 16 Utah 2d 223, 398 P.2d 873 and authorities therein cited.