(Decided June 19th, 1877.)

---

# NATHAN PUMPHREY *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

## MANDAMUS.

*Right of a private citizen to sue out the Writ of Mandamus to compel performance of duty by a public corporation—Acts of 1835, ch. 34, and 1876, ch. 220—Constitution, Art. 11, sec. 9, and Art. 3, sec. 33—Corporations—Power of Legislature over municipal corporations—Duties of municipal corporations as to highways.*

The Act of 1876, ch. 220, authorized and required the Mayor and City Council of Baltimore, to take charge of and maintain as a public highway, a certain bridge over Gwynn's Falls in the City of Baltimore, known as "Harman's bridge." On the refusal of the said Mayor and City Council of Baltimore to do so, P. filed his petition in the Superior Court of said city for a mandamus, to compel the Mayor and City Council to assume the charge of the said bridge, and maintain it as a public highway, as required by the said Act of 1876. The said Mayor and City Council demurred to the

petition, and by consent of parties a *pro forma* judgment was rendered sustaining the demurrer.    On appeal it was HELD :

1st. That the Legislature had the power to impose this duty upon the appellee, and that the Act of 1876, ch. 220, was a constitutional and valid Act.

2nd. That the appellant had the right to sue out the writ of mandamus to compel the performance of this duty.

Where the law leaves it to the discretion of a municipal corporation to assume control over a public highway or not, it would seem that at any time before the property was actually acquired and while the proceedings were *in fieri,* the corporation would have the right to change its purpose, though it had taken steps to assume control over it.

But the rights and obligations of the appellee depend upon the Act of 1876, which is *mandatory* in its terms, and by which the discretion of the city over the subject has been taken away, and it is "*directed and required*" to take charge and possession of the bridge.

Though the City of Baltimore is a public corporation it is not exempt from the control of the Legislature.

A public corporation is created for political purposes, with political power to be exercised for purposes connected with the public good; an instrument of the government subject to the control of the Legislature.

Public corporations are to be governed according to the law of the land, and the government has the sole right, as trustee of the public interest, to inspect, regulate, control and direct the corporation, its funds and franchises.

The power of the Legislature over such corporations is not absolute and unlimited, but looking to the nature of the duty imposed upon the appellee by the Act of 1876, there is no doubt of the power of the Legislature to impose it.

It is one of the ordinary duties of a municipal corporation to make and keep in repair the bridges on the highways belonging to it.

The Act of 1876, is not obnoxious to the objection based upon Art. 3, sec. 33, of the Constitution, which forbids the General Assembly from passing a special law for any case for which provision has been made by an existing general law.

The Act of 1876, ch. 220, is not in conflict with Art. 11, sec. 7, of the Constitution.

Where the petitioner for the writ of mandamus, to compel the performance of a duty by a public corporation has a personal interest in the matter different in kind from that of the general public, he is entitled to the writ.

There is a decided preponderance of American authority in favor of the doctrine that private persons may move for a mandamus to enforce a public duty, not due to the government as such, without the intervention of the government law officer.

The petition for a mandamus is always addressed to the discretion of the Court.

APPEAL from the Superior Court of Baltimore City.

In this case a petition for a *mandamus,* was filed by the appellant in the Superior Court of Baltimore City, on the 22nd of December, 1876, to compel the appellee to take charge of a bridge and preserve the same as a free public highway, in accordance with the Act of 1876, ch. 220, requiring them so to do.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, ALVEY and ROBINSON, J.

*F. A. Linthicum* and *J. J. Alexander,* for the appellant.

*T. A. Buchanan* and *J. V. L. Findlay,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

This is a petition for a writ of *mandamus,* filed by the appellant, to compel the appellee to take charge and possession of the bridge over Gwynn's Falls in the City of Baltimore, known as "Harman's Bridge." The defendant demurred to the petition and by consent of counsel a *pro forma* judgment was rendered for the defendant, reserving the right of appeal. The question presented is the sufficiency of the matters alleged in the petition to entitle the appellant to the writ.

The facts of the case as they appear in the petition are correctly stated in the appellant's brief as follows:

"Before the passage of the Act of 1835, ch. 24, and before the building of Harman's Bridge, there was existing a bridge over Gwynn's Falls near the present bridge, which was the property of the City of Baltimore and which was a free bridge. By the *Act of* 1835, *ch.* 24, Krebs and Linthicum were authorized to build the bridge known as Harman's Bridge, but as Gwynn's Falls and therefore any structure over it, was within the city limits, and as it was designed that the bridge thereby authorized to be built should take the place of the former bridge, it was *first* provided by the Act, that, subject to the builders' rights of taking tolls, &c., the bridge and its approaches should be a *public highway* of the city, and it was *secondly* provided that the city might at any time after the bridge was built, by resolution or otherwise, assume charge of keeping the bridge in repair ; whereupon the title to the bridge was to vest in the city and the bridge to become free. The rights of the proprietors were provided for by requiring the city upon assuming charge of the bridge, to pay them such a sum of money as should be ascertained by arbitration to be the value of the structure ; and the city was authorized on the completion of the bridge, to take down the old bridge and sell it.

The Act however was to go into effect only on its acceptance by the city. This acceptance was given by *ordinance* of *February* 11*th* 1836. The new bridge was built under the Act, and the old bridge was taken away and sold by the city. Messrs. Rayner and Shoemaker are now, and were at the times hereinafter mentioned, owners of the bridge.

The provisions of the Act of 1835, ch. 24, were in respect to the taking of the bridge by the city, and the awarding of compensation therefor, amended in several particulars by the *Act of* 1867, *ch.* 94, the provisions of this Act are set out in the petition.

The Mayor and City Council of Baltimore by resolution approved October 25th, 1870, reciting "that the interest

and convenience of the citizens of Baltimore City, and of the Counties of Baltimore and Anne Arundel, adjacent thereto, require that said bridge (which it was thereby declared was within the limits of said city) should be controlled by said city, and kept and maintained as a free bridge as other bridges in said city are kept and controlled," the city assumed the charge of keeping Harman's Bridge in repair without charging tolls for crossing the same, and *Mr. Tegmeyer* was appointed arbitrator on the part of the city under the Act of 1867, and directed to give notice to the owners of the bridge to appoint an arbitrator on their part as required by the Act. The Comptroller was by the resolution authorized to pay the amount of the award out of moneys in the city treasury not otherwise appropriated.

Tegmeyer accepted the office of arbitrator, and on the 4th day of November 1870, addressed a written notice to the owners of the bridge, of his appointment, requiring them to appoint an arbitrator to act in conjunction with him. The owners of the bridge did within sixty days thereafter, appoint as arbitrator on their part, the late *J. Dean Smith,* and the arbitrators met, took upon themselves the reference and proceeded therein. A difference occurred between them as to the value of the bridge, and Tegmeyer refused to proceed further in the reference, refused to appoint an umpire and withdrew from the arbitration altogether, in these matters acting at the instigation of the city.

The proprietors of the bridge remonstrated with him, and with the city, but without effect, and the Mayor and City Council of Baltimore not only refused to proceed further therein, but afterwards by resolution approved on the 24*th day of April* 1871, repealed the resolution of October 24th 1870, and thereby refused to take charge and control of the said bridge, and establish the same as a free bridge. The petition avers that the said attempted

repeal was invalid and of no force and effect.   Afterwards Smith died.   The petition alleges that the owners of the bridge have always been ready to appoint a new arbitrator in his stead, and go on with the reference, but the defendant has refused to go on with it, or to allow Tegmeyer to act in it, and has taken no other steps to acquire the bridge.

The General Assembly by the *Act of* 1876, *ch.* 220, *sec.* 7, enacted "that the Mayor and City Council of Baltimore be and they are hereby authorized, directed and required on or before October the first 1876, to take charge and possession of the bridge over Gwynn's Falls, known as Harman's Bridge, according to the Act of the General Assembly of Maryland of 1867, chapter 94."

This the defendant refuses to do, alleging that the Act of 1876 is not binding upon it.

The Act of 1835 while it authorized the city to acquire the possession and assume control of the bridge, left the matter to the discretion of the city authorities. The Act of 1867 did not alter the Act of 1835 in this respect.   After the passage of the Act of 1867 as before, it remained within the discretion of the city to purchase the bridge.   This was the state of the law when the resolutions of 1870 and 1871 · before referred to were passed.   The appellant's counsel have argued that the city, having by the resolution of 1870 declared its election, and having taken steps to acquire the bridge, by appointing an arbitrator to determine its value, was thereby concluded and could not afterwards change or abandon its purpose, and consequently that the repealing resolution of 1871 was invalid and of no force.

On the other hand the appellee's counsel has referred to the cases of *Balto. & Susquehanna R. Co. vs. Nesbit,* 10 *Howard,* 395; *Graff vs. Mayor, &c.,* 10 *Md.,* 544; *State vs. Graves,* 19 *Md.,* 351; *Merrick, Adm'r vs. Mayor, &c. of Balto.,* 43 *Md.,* 219, and *Norris vs. The Mayor, &c.,* 44 *Md.,* 598.

To show that at any time before the property was actually acquired, and while the proceedings were *in fieri*, the city authorities had the right to change their purpose, and repeal the resolution of 1870.

The authorities cited seem to be conclusive of this question in favor of the appellee. But it is not necessary to decide this point in the present case, as we think the rights and obligations of the appellee depend upon the effect and operation of the Act of 1876.

By this Act, which is mandatory in its terms, the discretion of the city over the subject has been taken away and it is " *directed and required* " to take charge and possession of the bridge.

The questions then to be determined are, 1st. Had the Legislature the power to impose this duty upon the appellee? and 2nd. Has the appellant the right to sue out the writ of *mandamus* to compel the performance of this duty.

1st. As to the power of the Legislature.

The appellee is a public municipal corporation, its existence is recognized by the Constitution, Art. 11, which contains provisions for its government, but it is not exempt from the control of the Legislature. Sec. 9 of that Article declares that it " shall not be so construed, or taken as to make the political corporation of Baltimore, independent of, or free from the control, which the General Assembly of Maryland has over all such corporations in the State."

What is the nature and extent of this control? "A public corporation is one that is created for political purposes, with political powers to be exercised for purposes connected with the public good in the administration of civil government: an instrument of the government subject to the control of the Legislature, and its members, officers of the government for the administration of the public good." *Regents' Case*, 9 *G. & J.*, 365, 397, and in the same case (page 401,) it is said, " Public corporations are to be governed according to the laws of the land,

and the government has the sole right as trustee of the public interest, to inspect, regulate, control and direct the corporation, its funds and franchises.    That is of the essence of a public corporation." See also *State, use of Washington Co. vs. B. & O. Railroad Co.,* 12 *G. & J.,* 399, and *Mayor & C. C. of Baltimore vs. State,* 15 *Md.,* 376.

The power of the Legislature over such corporations, is not absolute or unlimited.    But looking to the nature of the duty imposed upon the appellee by the Act of 1876, we have no doubt of the power of the Legislature to impose it.    It is one which, to use the language of Judge COOLEY, (*Con. Lim.,* 230,) "falls within the ordinary functions of municipal government to enter into," and we are not aware that the power of the Legislature to require a duty of that kind to be performed has ever been denied or seriously questioned.

The bridge in question is situated within the limits of the city.    By the Act of 1835, the bridge and its approaches were declared to be a public highway ; subject only to the right of the owners to charge toll.    It is one of the ordinary duties of the appellee to make and keep in repair the bridges on the highways of the city.    It is authorized to collect taxes and expend them for that purpose. *2nd Code, Art.* 4, *sec.* 13, *p.* 137.

Now if there were no bridge at that place, it would certainly be competent for the Legislature to require the city to construct one; then what valid objection can there be to an Act, requiring the city to purchase one which is already constructed ?

The legislation of the State furnishes many examples of the exercise of similar powers by the General Assembly over municipal corporations, and we are not aware the power has ever been denied or seriously questioned. We refer to the Acts of 1816, ch. 161, and 1820, ch. 111, as examples of similar legislation.

In our judgment, the Act of 1876 is not obnoxious to the objection based on *Art.* 3, *sec.* 33, of the Constitution, which prohibits " the General Assembly from passing a special law for any case for which provision has been made by an existing general law." In the public local laws relating to Baltimore City, no provision is made for the acquisition of the bridge in question, and the ascertainment of the amount to be paid to the owners, in the manner contemplated and directed by the Acts of 1835, 1867 and 1876.

The objection urged by the appellee's counsel that the Act of 1876, is in conflict with *sec* 7, *Art.* 11 of the Constitution, is in our opinion wholly untenable. Without entering into a discussion of this point, we think it is obvious from the terms of that section, that it contains nothing which denies to the Legislature the power to pass the Act of 1876. The section relates to a different subject, and has no reference or relation to the subject-matters embraced in the Act.

In our judgment, that Act is constitutional and valid, and the duty thereby required of the appellee is binding and obligatory, and is not left to its discretion.

2nd. The next question to be considered is the right of the appellant to maintain the suit.

The position maintained by the appellee is, that the duty imposed is of a public nature, which can be enforced only by a proceeding in the name of the State instituted by the proper officer, the Attorney General, and that a private person has no standing in Court, or any right to sue out the writ of *mandamus.*

All the authorities concur in support of the proposition, that where the petitioner has a personal interest in the matter, different in kind from that of the general public, he is entitled to the writ. In this case the petitioner sets out the particular facts and circumstances which are supposed to show the special and particular manner in which

the appellant is aggrieved, by the appellee's failure to perform the duty imposed by the Act of 1876.

We deem it unnecessary to go into an examination of that part of the petition, because we are of opinion that to entitle the appellant to the remedy here sought, it is not incumbent on him to show any personal interest in the matter different from that of other citizens.

We are aware there is some conflict in the decisions on this question, but after examining the cases, we concur in what has been said by Judge STRONG, speaking for the Supreme Court in *Union Pacific R. R. Co. vs. Hall*, 91 *U. S. R.*, (1 *Otto,*) 355, that "there is a decided preponderance of American authority in favor of the doctrine, that private persons may move for a *mandamus,* to enforce a public duty, not due to the government as such, without the intervention of the government law officer."

The authorities cited by the learned Judge on page 355, amply support this position and need not be referred to here.

The cases of *Heffner vs. Commonwealth*, 28 *Pa.*, 108, and *Reading vs. Commonwealth*, 11 *Pa.*, 196, cited by the appellee are to the contrary. It appears the Courts in that State maintain a different doctrine. We perceive no good reason why the suit may not be instituted by a private person.

It is said by Judge STRONG in the opinion before cited, "the principal reasons urged against the doctrine are that the writ is prerogative in its nature—a reason which is of no force in this country, and no longer in England—and that it exposes a defendant to be harassed with many suits. An answer to the latter objection is, that granting the writ is *discretionary with the Court*, and it may be well assumed that it will not be unnecessarily granted."

In *Webster's Case*, 29 *Md.*, 516, the writ was granted at the suit of a private person, to compel the performance of a public duty by the county commissioners. It does

not appear however that this objection was made or considered.

In *The Mayor and City Council of Balto. vs. Gill and others*, 31 *Md.*, 375, an injunction was granted against the appellants, upon principles somewhat analogous to those which govern the present case.

For the reasons stated, we are of opinion the order of the Superior Court ought to be reversed, and the cause remanded to the end that a writ of *mandamus* be issued as prayed.

*Reversed and remanded.*

(Decided June 19th, 1877.)