Gilmore, C. J.
Recognizing, as we do, the importance of any question affecting the welfare of the common schools of our state, we have fully and carefully considered the questions that are raised by the writ, answers, and reply; and to us it is quite clear that the case can be satisfactorily decided upon the questions of law that are presented, without reference to the issues of fact that are made in the case.
If it is apparent that the relator is legally capable of *383 prosecuting this proceeding, and that he has a clear legal right to the remedy he is seeking, we can not stop to inquire whether he is moving of his own volition, or at the request of some third party. Neither will we inquire whether the geographies in controversy are or are not adapted to the grades or classes in which they are required to be taught; nor can we pass upon the merits of the several series of geographies that are mentioned in the pleadings. Under the law the board of education is clothed with discretionary power to regulate and decide these matters ; and with the exercise of such discretion this court can not interfere; and hence it would be out of place to hear oral testimony on these subjects, or either of them.
The questions of law presented for decision are as follows :
1. Has the relator a legal right to prosecute this .proceeding ?
2. Hid the action of the board, on the, 12th of August, 1879, amount to an adoption of Harpers’ geographies, as of that date ?
3. If so, what effect did such adoption have upon Cornell’s geographies, which had long previously been adopted and used in the schools ?
4. Was the action of the board, on the 12th of August, 1879, affected by its subsequent action, on the 26th of August, 1879 ?
First. In answer to this question but little need be said. The relator was a resident tax-payer of the city of Columbus, and of the city school district, and was also the father of a child who was of school age; who was attending school in the city, and for whose use, in school, he had purchased and paid for Harper’s geographies, shortly after the action of the board, on August, 12th. He had, therefore. a pecuniary, and also a parental interest in having the public schools of the district controlled and conducted in the manner prescribed by the statute; and these interests are sufficient to enable him to maintain this proceeding to compel the board to perform its legal duty toward *384 him and his child, on his making it appear that it has failed and refused to do so. Weir v. Day, ante, p. 143. The duty-sought to he enforced is not a public duty due from the board to the state as such, but a duty due from the board to the relator personally, and such a duty may be enforced in the name of the state on his relation, without the intervention of the attorney-general. Union Pacific R. R. Co. v. Hall, 91 U. S. 355; Pumphrey v. Mayor of Baltimore, 47 Md. 145.
Second. The legal effect of the action of the board, on the 12th of August, must be ascertained by a construction of section 52 of the statute (70 Ohio L. 209), under which its action was had. The first clause of the section, which alone bears upon this question, reads as follows: “Each board of education shall determine the studies to be pursued, and the text-books to be used, in the schools under their control; and no text-book shall be changed within three years after its adoption, without the consent of three-fourths of the members of the board of education given at a regular meeting,” etc.
The fair meaning of this statute must be ascertained by a reference to its words, the subject-matter to which they relate, and the object intended to be obtained by its passage.
The clause quoted is divisible into two sentences, each complete in itself.
The first confers power on the board to act upon two subjects — the studies to be pursued, and the text-books to be used in the schools. The second is a conditional restriction on the power of the board over the latter subject, when it is within the condition; and, when the restriction is inapplicable, the power of the board over both subjects is equal and complete. In this case, the restriction was inapplicable to the action of the board on the 12th of August, for the reason that more than twice three years had then elapsed since the board had adopted the Cornell geographies as the text-book to be used in the schools. Consequently, at the date last named, the board could legally ex *385 ercise, without restriction, all the powers conferred by the first sentence in the clause above quoted. Under this, the-board is to determine the text-books to be used. "What is. the meaning of the word determine, as here used; or, what, operation and effect ought to be given to it ?
When taken in connection with the purpose of the law— which is the education, in free public schools, of the children of the state — and the subject-matter to which it relates — which is the text-books to be used in such schools— it is manifest that the word “determine” must mean, something more than investigating ar>d arriving at a conclusion by mental processes, although these are embraced.. Official action is contemplated and required, to give a practical effect to the word, and the injunction to do this is mandatory upon the board; and, in order that those who-must obey may know the will of the board, it is necessary that it should be declared in such a way that it may be-known. The usual mode by which the board of education makes known its will on any subject over which it has. control, is either by a motion, or by a resolution passed by the board at an official meeting and entered upon the-record of its proceedings, where it may be seen by any party interested. All this was done in the case before us. On the 15th of July, 1879, the_ committee on text-books-made a report to the board on the subject, among others, of the text-books on geography then in use, and those which they recommended for use in the future, in which they give their reasons for excluding the Cornell series then . in use, and substituting in their stead the intermediate, or' No. 2, and the primary geographies, of the Eclectic series.. If the report as made, had been adopted, its operation, would have been to exclude the condemned series then in-use, and to introduce those recommended into the schools-to be thereafter used.
By official action that part of the report, referring to new geographies, was laid over for two weeks. On the-12th of August, 1879, at a regular meeting of the board,. *386 the report was taken up; when a proposition from II. W. Derby & Co. was presented, stating the terms upon which they would furnish Harper’s geographies for use in the .schools. On motion of a member, the name of Harper’s geographies was substituted, in the report of the committee for that of the Eclectic series, by a vote of seven to four. And thereupon the report of the committee, as amended, was adopted by the board by a vote of seven to two.
"Whatever the legal effect of this action may be, it at least clearly shows that the board thereby intended to exercise the powers conferred upon it by law, in reference to the text-books to be used in the schools on the subject of .geography. It appears to us that the legal effect of this action of the board, by whatever name it may be called, was the adoption of Harpers’ geographies as the text-books •on that subject, to be thereafter used in the schools under •its control, until they are lawfully changed. When the action of the board was consummated, on the 12th of August, its power over the subject was exhausted for the period of three years from that date, unless the text-book so adopted should be changed within that time by the consent of three-fourths of the members of the board, given at a regular meeting thereof.
The “three years” begins to run from the date of the •official adoption of a text-book, and not from the time such •book is introduced and brought into actual use in the •schools.
From what has been said, it necessarily follows that the action of the board on the 26th of August, 1879, in which a bare majority of the members of the board voted to reconsider the action of the board on the 12th of August, was a nullity; and hence the action of the board of the date last named is still in full force and effect; and the effect of this action is to exclude Cornell’s geographies, and •substitute in their stead Harpers’ geographies, which are, as before stated, to be hereafter used in the schools until they are lawfully changed.
Following a recommendation of the committee in its re *387 port, wbicb we think reasonable and. proper, we are of opinion that no pupil shall be required to purchase a Harpers’ geography for use in said schools, who, on the 12th of August, 1879, already had a book of the Cornell series ■of geographies for such use ; but if any pupil, who had such old book at that date, shall purchase or otherwise obtain any other book for use in the schools, in the place of his or her old book of the Cornell series, it shall be a Harpers’ geography.
Further; Inasmuch as Harpers’ geographies were adopted .as text-books, in connection with the proposition of H. W. Derby & Co., the terms of said proposition are to be considered as conditions upon which the text-books were .adopted.

Peremptory vyrit allowed.