Containing the balance of the Cases of the January Term, the
April Term Cases, and Cases of the October Term, 1915.

DR. WILLIAM H. WELCH, ET AL.,

*vs.*

WILLIAM F. COGLAN, ET AL., COUNTY COMMISSIONERS
OF BALTIMORE COUNTY.

*Police power: public health, drainage and sewerage work. State
Health Commissioner: power of, under Chapter* 810 *of
Acts of* 1914. *Legislation: wisdom of—; not for the
courts to review. Taxation: legislative function;
delegation of power. Statutes: consti-
tutional in part.*

No precise boundaries are set to the police power, but the
protection and preservation of the public health is one of the
primary fields for its exercise. p. 7

In a thickly populated community, nothing is more vital to
the protection of public health than the establishment of proper
and suitable drainage and sewerage. p. 7

A drainage and sewerage system, while a work of internal
improvement, is not such a kind as was contemplated and
included in the prohibition contained in section 54 of Article 3
of the Constitution. p. 8

An Act may be constitutional in part, and unconstitutional in
part, without entirely destroying the Act. p. 9

The question of whether an Act would be constitutional in Baltimore City need not be discussed, where it is a question only of its constitutionality in one of the counties.      p. 9

In general, the power to tax is exclusively a legislative function, to be exercised only by that department of government, and can be delegated only to municipal corporations.      p. 12

While under Chapter 810 of the Acts of 1914, the order of the State Board of Health to the County Commissioners of a county, to provide a system of sewerage, etc., is mandatory upon them, it is not mandatory as to how the improvement shall be paid for; the question of how the improvement shall be made, and what system of taxation shall be provided therefor, is left to the County Commissioners, and such an order therefor is not a usurpation of any legislative function.      p. 13

The wisdom of such legislation is for the Legislature, and not for the courts.      p. 13

Chapter 810 of the Acts of 1914, conferring upon the State Board of Health the power and authority to order the installation of water supply systems, and systems of drainage and sewerage in any county, municipality or district, subject to the conditions and limitations contained in the Act, is constitutional.      pp. 14-15

The reasonableness of the Board of Health's exercise of the powers conferred upon it by the Act is always open to review by the courts.      p. 14

Where an order of the State Board of Health directing the County Commissioners of Baltimore County to install a sewerage system, etc., was set aside by the Circuit Court, on the ground of the unconstitutionality of the Act conferring such power upon the Board of Health, on appeal to the Court of Appeals, it was *held,* that the Act itself was constitutional, but as neither the record nor the trial below brought up the question of the *reasonableness* of the order of the Health Board, the case was remanded for further proceedings, without affirming or reversing the order of the Circuit Court.      p. 15

*Decided April 14th, 1915.*

Appeal from the Circuit Court for Baltimore County. (DUNCAN and McLANE, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J. BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Wm. Pinkney Whyte, Jr.,* and *Isaac Lobe Straus* (with whom was *Edgar Allan Poe, the Attorney-General,* on the brief), for the appellants.

*T. Scott Offutt* and *Edward H. Burke,* for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

By Chapter 810 of the Acts of 1914 of the General Assembly of Maryland, there were conferred upon the State Board of Health additional, and in some respects, unusual powers. The Act was one

> "for the better preservation of the public health by preserving the purity of the waters of the State; providing for the supervision and control by the State Board of Health over water and ice supplies, sewerage, trades' waste and refuse disposal; and for the maintenance, alteration, extension, construction and operation of systems and works relating thereto; providing for the raising of funds by counties, municipalities and sanitary districts for the maintenance, alteration, extension and construction of the same."

The Act then proceeds with considerable detail to make provision as to the method by which the declared purposes shall be carried out. The two sections with which the pres-

ent case is especially concerned are sections 7 and 9, which
are as follows:

"Sec. 7.  *And be it further enacted,* That when the
State Board of Health finds, upon investigation, that
any of the waters of the State are being, or are liable
to become, polluted in a way dangerous to health, or
so as to be in any way a nuisance, and such condi-
tion is due to the fact that there is no, or only a par-
tial, system of public water supply, sewerage or refuse
disposal in a certain county, municipality, district,
sub-division or locality; or in case absence or incom-
pleteness of a public system of water supply, sewerage
or refuse disposal in any county, municipality, dis-
trict, sub-division or locality is, in the opinion of the
State Board of Health, sufficiently prejudicial to the
health or comfort of that or any other county, mu-
nicipality, district, sub-division or locality; then the
State Board of Health may issue an order to the effect
that a public system of water supply, sewerage or ref-
use disposal shall be installed, and put into operation,
or the existing system completed, in that county, mu-
nicipality, district, sub-division or locality, within a
specified time; or the Board may order the installa-
tion of such devices or the institution of such methods,
and enforce such measures or regulations, as it may
deem proper under the circumstances."

"Sec. 9.  *And be it further enacted,* That the State
or any county, legally constituted public water, sewer-
age or sanitary district, or any municipality, upon
which an order of a State Board of Health is served,
shall, through its proper official or department, proceed
to raise such funds as may be necessary to comply with
such order within the time specified.  When approved
by the Governor and Attorney-General, any county,
legally constituted public water, sewerage or sanitary
district, or municipality may raise such funds, or any
part of them, by issuing bonds, stocks or notes without
prior legislative enactment; and the question of issu-
ance of such bonds, stocks or notes shall not be required

to be submitted to a vote of the people. The money made available by bonds, stocks or notes so issued shall constitute a sanitary fund, and shall be used for no other purpose than for carrying out the order or orders of the State Board of Health. At no time shall the total outstanding issue of such bonds, stocks or notes exceed two per cent. of the total value of all property within the limits of such county, district or municipality, as listed and assessed for taxation. The amount of bond, stock or note issue as allowed by this section may be in addition to the total indebtedness otherwise permitted by law. No public moneys shall be expended by the State, any county, legally constituted public water, sewerage or sanitary district for any of the purposes enumerated within this Act, unless such expenditure and the amount thereof has been approved by the State Board of Health."

Acting under the authority conferred or attempted to be conferred by section 7, the State Board of Health, through its secretary, on October 23, 1914, issued the following order:
. "October 23, 1914.
"To the County Commissioners of Baltimore County.
Greeting:
"It is this 23rd day of October, 1914, ordered by the State Board of Health of Maryland, by virtue of the power conferred upon it by the General Assembly of Maryland, that you install and put into operation, a sewerage system in Baltimore Co., within the Tiffany Run Drainage Area, Govans, and described on plat entitled 'Govans and Vicinity—Tiffany Run Drainage Area—District required to be sewered under order of State Board of Health to Baltimore Co. Commissioners, dated October 23, 1914,' which plat is hereto attached and made a part hereof.
"The absence of a sewerage system sufficient to take care of the sewage of said district, as it now exists, is a menace to the health of the people.

"It is further ordered by the State Board of Health of Maryland, that you install this sewerage system, and put it into operation, not later than January 1st, 1916.

"Witness the hand of the Secretary and Executive Officer of the State Board of Health of Maryland, and the affixing of its seal the day and year first above written."

Section 18 of the Act gives the right to any county, municipality, legally constituted water, sewerage or sanitary district, corporation, company, institution or person dissatisfied with any order of the State Board of Health to institute an action within ten days, to vacate and set aside such order of the State Board upon the ground, either that such order is unlawful or unreasonable, or unnecessary for the protection of the public health or comfort. In the exercise of the right given by this section, the County Commissioners of Baltimore County upon the service of the order recited, instituted the present proceedings to vacate and set aside the order of the State Board of Health, upon the ground that the same was unlawful, and beyond the powers of the board. The petition does not allege that the order is not necessary for the protection of the public health or comfort, and ask that the order be vacated for any such reason. The sole question, therefore, is the constitutionality or validity of the Act.

The petitioners do not claim in their argument or brief, that the Act is invalid in its entirety, but only that sections 7 and 9 transcend the power of the Legislature under the constitutional limitations resting upon that branch of the government. The point thus raised is a narrow one, and yet of great importance to the citizens of every county in this State. That will be appreciated when it is borne in mind that the effect of this legislation, if valid, is to place in a board of seven men, not elected by or accountable to the people, the power to compel the several counties of this State to incur an indebtedness for which the several counties are required to issue the bonds of the counties to an aggregate amount for the

entire State of more than $9,500,000, ranging from $60,645 in Calvert County, to $3,021,756 in Baltimore County. This is a power which may be exercised, if the Act is valid, without the consent of the people upon whom the burden is to be cast, and without their even having had the opportunity to give an expression to their views or desires in the matter. It is but just, therefore, that when the Legislature attempts to confer so comprehensive a power, one which may affect seriously every owner of any property in any part of the State, it should receive most serious and careful consideration.

The Circuit Court for Baltimore County held the Act invalid, and the case has been presented in this Court with marked ability and zeal upon both sides, and the fullest possible consideration has been devoted to it, because in addition to the strictly legal questions involved, it is but another and more pronounced step in the direction of establishing government by boards or commissions.

The basis for all legislation of this character is to be found in the police power of the State. While no precise boundaries have ever been set as to what may and what may not be properly classed as an exercise of police power, the protection and preservation of the public health has universally been recognized as one of the primary fields for its exercise, and it needs no citation of authorities for the proposition that in a city or thickly populated community nothing is more vital to the preservation and protection of the public health than the establishment of proper and suitable drainage and sewerage.

In *Boehm* v. *Baltimore,* 61 Md. 263, JUDGE MILLER, speaking for this Court, said: "The preservation of the health and safety of the inhabitants is one of the chief purposes of local government."

The same doctrine was even more explicitly stated by the late JUDGE MCSHERRY, in the case of *State* v. *Hyman,* 98 Md. 613, as follows:

"One of the legitimate and most important functions of civil government is acknowledged to be that of providing for

the welfare of the people by making and enforcing laws to promote and preserve the public health, the public morals and the public safety. Civil society can not exist without such laws, and they are therefore justified by necessity and sanctioned by the right of self preservation. The power to enact and enforce them is lodged by the people with the government of the State, qualified only by such conditions as to the manner of its exercise as are necessary to secure the individual citizen from unjust and arbitrary interference." And to the same effect was the decision in *Deems* v. *Baltimore,* 80 Md. 173; *Sprigg* v. *Garrett Park,* 89 Md. 409, and *State* v. *Broadbelt,* 89 Md. 565.

In one sense of the term the construction of a drainage or sewerage system is a work of internal improvement, but the cases in this State are conclusive that it is not such a work of internal improvement as was contemplated and included in the prohibition contained in section 54 of Article 3 of the Constitution. *Bonsal* v. *Yellott, et al.,* 100 Md. 481. In that case the Court was asked to enjoin the County Commissioners of Baltimore County from expending certain funds under their control on the construction of State roads, under the provisions of the Act of 1904, Chapter 225. In deciding that case JUDGE BOYD, speaking for this Court, discusses the limitations imposed in Article 3 of the Constitution, sections 34 and 54, and holds them inapplicable with regard to such matters as roads or bridges, but roads and bridges are no more public works than is the construction of a proper sewer system, and it may be fairly questioned whether an Act with regard to roads and bridges can properly be said to be germane to the police powers of the State.

One of the grounds of attack upon this Act was its alleged violation of the Constitution, with regard to the debt incurring power of Baltimore City. This objection need not be considered, as the order of the Board of Health which has given rise to the present case in no way affects Baltimore City; moreover, the limitation upon the incurring of an indebtedness by the City is different from that in the case

of a county, and it may be that an Act may be constitutional
in part and unconstitutional in part, without entirely destroy-
ing the Act, and this may result from distinct and different
constitutional provisions with regard to one part of the State
from those which obtain in another, as well as from embody-
ing in one and the same section different provisions, for it
has been held that a statute may be valid in part and void
in part, even when the two parts are contained in the same
section, provided that the valid part is independent of and
severable from that which is void. *Field* v. *Malster,* 88 Md.
691; *Steenken* v. *State,* 88 Md. 708.

Upon the question whether Baltimore City is subject in all
respects to the provisions of the Act in question, no opinion
is now expressed. A further objection might have been raised
by reason of the fact that by the terms of the Act, the State
itself is made subject to the control of the board; that is,
that the creature is superior to the creator; but here again
we are not called upon to express any opinion by reason of
any of the allegations in this case.

The Circuit Court of Baltimore County was, therefore,
clearly correct when it stated in its opinion, that the pro-
posed sewerage system, although a work of internal improve-
ment, did not fall within the class of such works prohibited
to the counties, unless authorized in the method laid down in
section 54 of Article 3 of the Constitution.

It was also correct when it stated that it has been a fre-
quent practice in the passage of Acts of Assembly to provide
for bond issues as a source from which to derive the funds
required for works of a public character without a submission
of them to the voters of the county. No more appropriate
illustration of this is needed than the case of *Revell* v. *Annap-
olis,* 81 Md. 9. The Court for Baltimore County, however,
set the Act aside upon the ground that the board had acted in
an arbitrary manner, and that its order of October 23rd was,
therefore, unreasonable. This involves a consideration of a
number of matters.

Sewer legislation has been abundant in recent years. In 1912 the General Assembly passed an Act empowering the County Commissioners of Baltimore County to adopt sewerage or drainage systems whenever in their opinion public welfare or convenience might require it, subject to certain restrictions set forth in the Act, and invested them with the power to make reasonable regulations for the maintenance of such systems, the regulations to be subject to the approval of the State Board of Health. It also conferred upon them the power to take property for the construction of such system, and gave them the power of condemnation. It further empowered them to assess benefits to the owners of property supposed to have been benefited thereby, and provided a method by which the costs of construction could be paid by the property benefited, either in whole or in part, or a portion of it made a charge upon the county at large, with the right to divide and extend over a series of years the costs of the construction. It also conferred upon them, the power, with the approval of the State Board of Health, to require property owners to connect their drainage with a system so established, and authorized them to fix, subject to the approval of the Public Service Commission, the terms which should be charged for such connection or service. Portions of this Act were re-enacted with slight verbal changes by Chapter 804 of the Acts of 1914, approved April 16, 1914. Acting under the authority given by the Act of 1912, Ch. 157, the County Commissioners of Baltimore Co. adopted regulations, which were duly approved by the State Board. On the same day, April 16th, 1914, another Act was approved, more comprehensive in its terms in some respects, for drainage systems to be installed in Baltimore County and providing for an issue of bonds by the county to the extent of $1,000,000, on the ratification of the Act by the voters of the county. Three days earlier Acts had been approved making provisions for the construction of sewers and drainage areas and systems in Prince George and Mont-

gomery counties, fuller in some respects than the Act relating to Baltimore county. On the same day on which the Act of 1914 for Baltimore County was approved, by another Act the State Board of Health was authoried to divide the State outside the City of Baltimore into ten sanitary districts, *following county lines.* The Act of 1914 making provision for a general sewerage system, and for the issue of bonds of Baltimore County to the extent of $1,000,000 was submitted to the people of that county at a special election about six months before the order now complained of was passed, and at that election was decisively rejected. Certainly there had been no lack of legislation attempted on the subject. It may have been the underlying idea of the Circuit Court for Baltimore County that inasmuch as the people had by their vote rejected the Act of 1914, that any action upon the part of the State Board of Health was necessarily arbitrary, and some degree of color would be given to such a view if the petition of the County Commissioners had alleged that the construction of a sewerage system within the Tiffany Run drainage area was unnecessary. But upon the case as presented by the pleadings it is difficult to see upon what theory the action of the State Board can be called arbitrary. By their order it was distinctly stated that "the absence of a sewerage system sufficient to take care of the sewage of said district as it now exists is a menace to the health of the people." This is nowhere denied. Such being the case, it was the plain duty of the County Commissioners of Baltimore County in the exercise of the police power, to take appropriate steps to obviate the condition, and it was likewise the duty of the State Board of Health, if it possessed the power, to require this to be done.

It remains, therefore, to consider the nature and extent of the power of the legislature, including the power reposed in the board as the effect of the order, to require the pledging the credit of the county, and the issuance of bonds where with to defray the cost of the construction of a proper system for sewerage for the Tiffany Run Drainage area.

The performance of an undertaking of this description involves the outlay of a considerable amount of money and the creation of a debt, the interest upon which,·and ultimately the debt itself, must be met by taxation. There might, by virtue of the legislative enactment, be an immediate levy for the purpose of paying the obligation, or there might be an issue of bonds, the proceeds of which could be employed for that purpose, but in either event taxation is the only source by which the indebtedness could be finally discharged, and some discussion was devoted in the argument to whether this was a tax imposed or to be imposed by the State Board of Health or the County Commissioners. If the former, the argument ,was that the Act was void for the reason that it was an attempt to delegate to a board a non-delegable power. The rule as laid down by the many text writers is to the effect that the power to tax is inherently a legislative function, to be exercised only by that department of the government, and that it can be delegated only to municipal corporations. 37 Cyc. 725; *Cooley on Taxation,* 2d Edn., 61, 63, 65, and some of the decisions ably support this view. *State* v. *Des Moines,* 103 Iowa, 76; *Van Cleve* v. *Passaic Valley Sewerage Commissioners,* 71 N. J. L. 574; *Blades* v. *Detroit Water Commissioners,* 122 Mich. 366; *Martin* v. *Tyler,* 25 L. R. A. 838.

But the proposition of law is by no means as broad as its language might be taken to imply, and in numerous insances authority conferred by legislatures upon School Boards and School Commissioners to fix the amount of the tax to be levied for the maintenance of schools has been sustained.

The rule in this State is that laid down in *Baltimore v. The State,* 15 Md. 376. So far as the present case is concerned no such latitude is attempted to be conferred. Neither in section 7 or 9, or elsewhere in the Act, is there any attempt to invest the State Board of Health, with any power either to issue bonds or pledge the credit of any county, or to incur any indebtedness for a county, or levy any tax upon

the property in any county in the State for carrying into effect any orders which it may issue. This is a power which rests solely with the County Commissioners in their capacity as a municipal corporation.

The order of the Board of Health may be mandatory upon them, but not the manner in which it shall be carried out. They may, in conformity with the legislative Act, levy a tax for the immediate payment of the cost of the required improvements, and make it a charge on all the property in the county; or they may require its payment only by the property supposed to derive some benefit from the work performed; on the other hand they may, by the terms of the Act in question, meet the immediate charge by an issue of bonds not to exceed two per cent of the assessed value of the property in the county, and provide for the gradual payment of them, either serially or by the means of a sinking fund. All of that is by the Act left to the discretion of the municipal corporation, the County Commissioners. It has often been pointed out that legislation of this description tends towards extravagance, wasteful and often reckless expenditure of public money, but it has just as often been said that this is a tendency which is not within the province of the courts to control, but one the responsibility and remedy for which lies with the Legislature. All that the Court can do is to deal with the legislative power and its exercise.

What that power is was forcefully stated by MR. JUSTICE FIELD in *Hagar* v. *Reclamation,* Dist. No. 108; 111 U. S. 701, when he said: "It is not open to doubt that it is in the power of the State to require local improvements to be made which are essential to the health and prosperity of any community within its borders. To this end it may provide for the construction of canals for drainage marshy and malarious districts, and of levees to prevent inundations, as well as for the opening of streets in cities and of roads in the country. * * * Such authority may be lodged in any board or tribunal which the Legislature may designate. * * * The expense of such works may be charged against parties specially benefited

and be made a lien upon their property. * * * But this is a matter purely of legislative discretion. Whenever a local improvement is authorized, it is for the Legislature to prescribe the way in which the means to meet its cost shall be raised, whether by general taxation, or by laying the burden upon the district specially benefited by the expenditure." And to the same effect is *Mobile* v. *Kimball,* 102 U. S. 691, and the same doctrine has been frequently announced in this State. *Revell* v. *Annapolis,* 81 Md. 1; *Worcester Co.* v. *Melvin,* 89 Md. 41; *Thrift* v. *Laird,* 125 Md. 55; *Washington County* v. *B. & O.,* 12 G. & J. 436; *Hagerstown* v. *Sehner,* 37 Md. 180; *Pumphrey* v. *Baltimore,* 47 Md. 145.

Counsel for the appellant relied considerably upon the decision in the *State Board of Health* v. *Greenville,* 86 Ohio St. 1, because of the marked similarity of the Acts of Ohio and of this State. There were, however, points of dissimilarity, and in view of the repeated consideration given by this Court to the questions now presented, a discussion of the Ohio statute and of the decision referred to, would seem superfluous.

It scarcely needs to be said that the reasonableness of the exercise of any such power as that entrusted to the State Board of Health by the Act of 1914 is always open to question (*State* v. *Gurry,* 121 Md. 541), and it is expressly made so by the provisions of section 18 of the Act, but there was no allegation of unreasonableness in the petition, and, therefore, no valid ground upon which the Circuit Court for Baltimore County could predicate its conclusion, that the action of the board was arbitrary.

The ground upon which the County Commissioners relied in their petition for relief from the order of the State Board was the alleged invalidity of the Act; that upon which the relief was granted was the arbitrary and unreasonable nature of the order. No proof was presented to the Court adequate to sustain this view, and the case was one, therefore, in which the petition should have been dismissed, or permission granted the petitioners to so amend their petition as to enable them

to set up and adduce proof to sustain an allegation of lack of necessity or unreasonableness, so that the case might be determined upon its substantial merits, rather than on a technical construction of the law.    Courts do not and ought not to favor the splitting up of grounds of relief, so as to protract litigation by successive cases with regard to the same subject, and this is especially true in a matter which affects the public health, and where time may be and often is, a matter of vital importance.    Had this Court in any previous case been called upon to pass upon the validity or invalidity of the Act of 1914, Chapter 810, there would be no hesitation in reversing the decree appealed from and dismissing the petition.    But when we consider the great and unusual powers conferred by the Act upon the State Board of Health, the far-reaching effect upon possibly more than half of the tax-payers of the State, and that the case as presented to the Circuit Court for Baltimore County and to this Court, did not and could not amount to an adjudication of the substantial merits of the case, there is presented a condition peculiarly suitable for the exercise of the power conferred on the Court by Article 5, section 38 of the Code, of remanding this case to the Circuit Court for Baltimore County, that leave may be granted to the petitioners to amend their petition, if they can properly do so, in accordance with section 18 of said Act, such amendment to be made within ten days from the receipt by the clerk of said Court of the order of remand, and in case the petitioners fail so to amend, with instructions to said Court to dismiss the petition.

> *Case remanded without affirming or reversing the order appealed from for further proceedings in accordance with this opinion, the costs to abide the final determination of the case.*