NICHOLAS GOLDSBOROUGH *v.* DEPARTMENT OF TRANSPORTATION ET AL.

[No. 105, September Term, 1976.]

*Decided January 4, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Thomas M. Downs,* with whom were *C. Fred Delavan* and *Harry C. Blumenthal* on the brief, for appellant.

*J. Michael McWilliams, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Kaye T. Brooks, Assistant Attorney General,* on the brief for Department of Transportation, *Joseph S. Kaufman, General Counsel,* on the brief for Mass Transit Administration, appellees.

MURPHY, C. J., delivered the opinion of the Court.

We granted certiorari in this case to decide whether the proposed publicly owned Baltimore Area Rapid Transit System constitutes an "internal improvement" within the meaning of the Maryland Constitution, Art. III, § 34 which prohibits the State's participation "in the construction of works of internal improvement which shall involve the faith or credit of the State . . . ." [1]

---

[1] Prior to its recent amendment, ratified by the voters on November 2, 1976, the relevant parts of § 34 read as follows:

". . . nor shall the General Assembly have the power in any mode to involve the State in the construction of works of internal improvement, nor in granting any aid thereto which shall involve the faith or credit of the State; nor make any appropriation therefor . . . ."

Appellant Goldsborough filed a taxpayer's suit against the State Department of Transportation, the Mass Transit Administration, the Secretary of Transportation, and the Mass Transit Administrator. He alleged that the Rapid Transit System, if constructed, will constitute an "internal improvement" constitutionally prohibited by § 34 and that the action of the General Assembly in authorizing and appropriating expenditures to assist in the financing of the project [2] was therefore illegal and unconstitutional. The Circuit Court for Anne Arundel County (Childs, J.), relying primarily on *Bonsal v. Yellott*, 100 Md. 481, 60 A. 593 (1905), held that the proposed project was not a work of internal improvement within the contemplation of § 34. Because of the importance of the issue, certiorari was granted prior to the appeal being heard in the Court of Special Appeals.

The history underlying and giving rise to the inclusion of § 34 in the Maryland Constitution is well documented. The constitutional provision prohibiting the State's involvement in works of internal improvement which implicate its faith or credit was intended to prevent any repetition of the State's fiscal crises in the second quarter of the 19th century. The State had invested millions of dollars in privately owned and operated railroad and canal companies which had been organized primarily for profit to their stockholders; the State had transferred long-term State bonds to the companies in exchange for subscriptions to their securities. The companies sold the bonds, thereby pledging the State's credit, in order to raise capital. It was their responsibility to pay the interest on the bonds and ultimately to redeem the principal. The projects failed to generate sufficient income to do so, however, and the State was fiscally unable to meet the interest payments on the bonds. Bankruptcy threatened, and it was only by imposing additional taxes that the State survived the financial crisis. The State's purpose to realize a profitable investment while at the same time assisting in the development of the State thus ended in fiscal disaster. *See Secretary of*

---

2. *See* Chapter 237 of the Acts of 1976.

*Transportation v. Mancuso,* 278 Md. 81, 359 A. 2d 79 (1976);
*Johns Hopkins University v. Williams,* 199 Md. 382, 86 A. 2d
892 (1952); *Bonsal v. Yellott, supra; Report of the
Constitutional Convention Commission, Maryland, 1967,* at
214, *et seq.*

The seminal case construing the constitutional provision
in question was *Bonsal v. Yellott, supra.* Our predecessors
there held that State involvement in the construction of a
public road did not violate the provisions of § 34. While
recognizing that a public road was an internal improvement,
the Court said that the term "works of internal
improvement," as used in § 34, was not intended to
encompass such a public project. It held that in view of the
history of the constitutional provision, "the people had in
mind the character of 'internal improvements,' which had
been so disastrous to the State," 100 Md. at 499, 60 A. at 594;
that the works of internal improvement contemplated by
§ 34 "were such as the State had been connected with or
interested in as 'stockholder,'' or 'creditor' — such as had
driven it to the very verge of bankruptcy and repudiation —
and not such as every State government must have, either in
its own name or in the names of its 'political agencies,
created for the better government of the affairs of the State,'
. . ." 100 Md. at 505, 60 A. at 596.

For reasons identical to those set forth in *Bonsal,* we held
in *Lerch v. Maryland Port Authority,* 240 Md. 438, 214 A. 2d
761 (1965), that a publicly owned international trade center
was not a prohibited work of internal improvement under
§ 34. The same result was reached in connection with a
public sewerage or drainage system, *Welch v. Coglan,* 126
Md. 1, 94 A. 384 (1915).

Appellant argues that unlike any of these facilities, the
Rapid Transit System is the very type of internal
improvement contemplated by the framers of § 34. He says
that the system is a railroad or railway and that it is fated
for the same kind of financial disaster as befell the rail and
canal companies of the 19th century, with the same
disastrous results for the State. Describing the proposed
system as "a project of doubtful wisdom," one which can

never be self-supporting, he urges that we declare the State's involvement with it violative of § 34.

Assuming without deciding that the Rapid Transit System is a railroad or railway, it is plain to us, as it was to our predecessors in *Bonsal,* that the question is not whether such a publicly owned project can be considered as an internal improvement; rather it is whether such a project was intended by the framers of § 34 and the people who adopted it to constitute a constitutionally prohibited work of internal improvement. *Bonsal* and its progeny make clear that it was not. The Mass Transit Administration, the public body responsible for the planning, construction, and management of the project, bears no resemblance to the privately owned rail and canal companies of the last century. Its purpose is purely public; [3] their purpose was the enhancement of private profit. In other words, the Rapid Transit System will be a publicly owned facility built in response to a legislative determination of a public need for mass transportation and not for some envisioned profit or investment purpose. Under the legislative mandate, the system will be constructed and maintained as a primary function of government; in reality, it is a facility which, like the public road in *Bonsal,* "public authorities alone construct." 100 Md. at 499, 60 A. at 594.

That the Rapid Transit System may be "a project of doubtful wisdom" because of its alleged inability to become

---

**3.** The legislative policy of the act establishing the Metropolitan Transit District and the Mass Transit Administration is stated as follows:

"The development of improved and expanded transit facilities, consisting of rapid transit and bus service operating as a unified and coordinated regional transit system, is essential for the satisfactory movement of people and goods, the alleviation of present and future traffic congestion, the economic welfare and vitality and the development of the metropolitan area of Baltimore .... Such a regional transit system cannot be achieved by the unilateral action of any one of Baltimore City, Baltimore County and Anne Arundel County but requires action by the State of Maryland, through a State authority which is politically responsive to local needs and which will assure that the development of the regional transit system fosters general development plans for the State, the region and the local development plans of the participating political subdivisions." Maryland Code (1957, 1972 Repl. Vol.) Art. 64B, § 1.

self-supporting, as appellant suggests, is not the concern of the courts. The wisdom or expediency of a valid law adopted in the exercise of the State's police power is not subject to judicial review. *Steuart Petroleum Co. v. Board of County Commissioners*, 276 Md. 435, 347 A. 2d 854 (1975). "[T]he validity of the means chosen to carry out a public purpose does not depend upon proof that the means will be successful." *Lerch v. Maryland Port Authority*, 240 Md. at 449, 214 A. 2d at 767. We judge only the project's constitutionality and hold that it does not violate the prohibition of § 34 against State participation in works of internal improvement which involve the faith or credit of the State. In so concluding we have carefully considered, but find inapposite, *Attorney General v. Pingree*, 120 Mich. 550, 79 N. W. 814 (1899), upon which appellant places his principal reliance.

*Judgment affirmed with costs.*