HEGHINIAN *v.* FORD, ACTING COMMISSIONER OF POLICE

[No. 92, October Term, 1955.]

*Decided February 14, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Paul J. Yeager* for the appellant.

*Norman P. Ramsey, Deputy Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The decision in this appeal may well mark the end of a minor phase of a crusade. The appellant, a woman physician, and, at the time, a police department doctor, sought by *mandamus* to compel the police commissioner of Baltimore City to revert to what is said to have been the practice for over forty years, recently departed from, and designate both a male and a female physician for each physical examination of women that may be required by law in connection with criminal cases. The trial court dismissed the petition on the ground that under the applicable statutes, the commissioner, in his discretion, need appoint but one physician—a man and a woman alternately.

In 1910 the Legislature, by Chapter 405 of the laws of that year, required the Board of Police Commissioners of Baltimore to appoint four doctors, two men and two

women, to serve as police physicians and to call upon one of these to make any required examination. Chapter 733 of the laws of 1912 amended the statute to provide that when any police magistrate or the State's Attorney of Baltimore City, decides that it is necessary for a proper hearing or discharge of a case that there be an examination requiring the exposure of the person of any woman or female minor sixteen years of age or over, he shall notify the police commissioner "* * * who shall designate alternately one of the men and one of the women physicians * * *", of the four required to be appointed, to make the examination. The statutes are now codified as Secs. 576-577-578 of the Charter and Public Local Laws of Baltimore City, Flack, 1949. It was just at this time that the Woman's Rights movement was gaining full momentum in the drive to enact the Nineteenth Amendment to the Constitution of the United States, and it is reasonable to assume that the statute was passed to insure professional employment to the women physicians required by the act to be appointed. The appellant, however, says that the purpose of the act was to require that there always be both a male and a female physician at the examinations so as to afford vital protection to an accused and to the State in the cases in which women are complaining witnesses, because there is thus made available the professional opinion and if necessary the testimony of two doctors rather than one. She says that from 1912 on it has been customary to appoint a male and a female physician in each case, and argues that since the Legislature reenacted the statutes in 1943 and 1949 so as to increase the fees of the doctors, and left untouched the original provisions for the designation of physicians, therefore, it has given approval to the administrative practice. It is agreed that there was no regular alternation of pairs of male and female physicians but only that, in each case, one male and one female physician were used, often the same female physician— the appellant—in many successive examinations. This practice continued from 1912 until 1954 when the com-

missioner started to designate but one physician, first a man and then a woman, the attorney general having advised him that this was proper.

The appellant says that the relief sought "is not only of interest to her in her capacity as an appointed and commissioned physician to the police department * * * but also is of interest to her as a citizen and taxpayer of the City of Baltimore" and that, therefore, she has sufficient standing to be granted the writ of *mandamus*. It is to be noted that at the time of the filing of the case below, the appellant was a duly appointed police physician but that at the time of the hearing, she no longer was, not having been reappointed when her term expired. Any right she has to the relief she seeks must rest solely on her interest in the matter as a citizen.

The commissioner says that the appellant has not sufficient interest as a citizen and taxpayer to be granted *mandamus* to compel performance of a duty owed by one government official to other government officials, because this is a duty owed to the government as such and not to the general public. He argues that Dr. Heghinian has not shown a clear legal right in herself and a corresponding duty on his part, which is necessary before the court could issue the writ of *mandamus*. The commissioner continues that even if there were such a right, the statute is plain in its meaning and that what it says is that he must designate, in rotation, first a male physician and then a female physician, and so on.

The lower court assumed the right of the appellant to seek relief but found that the statutes were plain and unambiguous in meaning, and that the commissioner's contention as to its meaning was correct. We think that there is much soundness in this conclusion of the lower court, for unless the statute does require that the alternation is to be between the sexes, with one doctor serving each time, little sense can be gleaned from those particular provisions. We find it unnecessary, however, to decide the point since we are convinced that appellant has no standing to seek the writ of *mandamus*.

Since the appellant has no interest in the matter different from that of any member of the general public, we must examine the right of a citizen to compel action by a public official. *Mandamus* was originally a prerogative writ and a private citizen could not obtain it to compel performance of a public duty unless he had an individual and separate interest in the matter, not common to other citizens, and it was necessary for a government law officer to move for the *mandamus*. Later the prevailing view came to be, generally and in Maryland, and long has been, that "* * * private citizens may move for *mandamus,* to enforce a public duty, not due to the government as such, without the intervention of the government law officer." *Pumphrey v. Baltimore,* 47 Md. 145, 154. The rationale of this rule seems to be that if the duty is one in which the public, or a segment of the public, has an interest, an individual who is a member of the group which has such an interest may act on behalf of that group by virtue of the interest he shares with the others. It is still true, nevertheless, that to be entitled to the issuance of the writ of *mandamus,* the relator must have a real interest in the subject matter of the suit whether it be his alone or shared by a great number of people, and the respondent must owe him, or the group of which he is a member, an imperative duty. *Pressman v. Elgin,* 187 Md. 446, 452; *Buchholtz v. Hill,* 178 Md. 280, 288. The cases in which this Court has held that the writ should issue in favor of an individual who shared an interest with the general public, show that the duty which is to be compelled is a duty owed to the public. In *Pressman v. Elgin, supra,* the statute directed that motor vehicle records were to be open for public inspection. Inspection was refused an attorney seeking it on behalf of his client in the course of his practice. This Court said that the writ should issue. Judge Delaplaine said for the Court: "* * * an applicant for the writ of *mandamus* must show a clear legal right in himself and an imperative duty on the part of the defendant. Unless the right which the petitioner seeks to enforce and the

corresponding duty of the defendant are clearly established, the writ should not be granted." It was held that a member of the public not seeking to satisfy idle curiosity, but having a real interest in the inspection, was entitled to see the motor vehicle records and that an attorney at law, whose client had such a right, himself had an interest entitling him to make the inspection. The Court said: "In fact, he has a two-fold interest: first, as the representative of his client in an important confidential relationship; and secondly, by reason of any counsel fee to which he may be entitled for his services." In *Pumphrey v. Baltimore, supra,* the City had a mandatory statutory obligation to take over and maintain a bridge open to use by the public. In *Thomas v. Field,* 143 Md. 128, the school board had been given a fund to equalize teachers' salaries and it was held that citizens and taxpayers had standing to seek to have the fund used for the purpose for which it was granted. In *Levering v. Park Commissioners,* 134 Md. 48, the *mandamus* sought to require the Park Commissioners to deny the playing of games on Sunday in the public parks and it was held that there was a general interest, in which the petitioners shared, in the subject matter of the proceeding. The Court again quoted the rule that a private person may move for a *mandamus* to enforce a public duty *not due to the government as such.* The italicized condition has been repeated from time to time. See 2 *Poe, Pleading and Practice,* Sec. 710; and *Merrill on Mandamus,* Sec. 230, p. 290. It would seem that the reason the private person may not move to enforce a duty owed to the government as such is because the citizenry has no direct and immediate interest in the performance of that duty. Even as, according to Lord Nelson, England expected every man to do his duty, a citizen may properly expect every public servant to do his duty but it does not follow that he may compel the performance of that duty by *mandamus* if it is not owed to the public as such but is interdepartmental or owed to other officers or branches of the government. In the case before us, there is no

duty on the police commissioner to designate a physician for an examination unless, in a particular case, he is requested to do so by a magistrate at a police station or the state's attorney, each of whom must exercise discretion in deciding whether or not then to request the examination. The general public has no right to demand an examination in any case and no direct interest in how the duty imposed by the statute on the commissioner for the requested examination is executed. This is a duty owed to the magistrate or state's attorney, not to the public, and its performance benefits the official who calls for it in the doing of his work as a law enforcement officer but does not benefit the citizenry directly or sufficiently to allow one of them the right to compel its execution.

In *Liquor Stores Assn. v. Commissioners,* 171 Md. 426, owners of licensed retail package liquor stores, who were taxpayers of Baltimore City, sought *mandamus* against the Board of License Commissioners of Baltimore City to block the renewal of certain licenses on the ground that the applicable statutes forbade the renewals. Chief Judge Bond said for the Court: "Under the decisions of this Court the complainants would not be entitled to the writ of *mandamus* even if the commissioners were found to have acted on erroneous construction of the law; and for that reason the decision below must be affirmed. The courts of the State will entertain jurisdiction of suits by citizens and taxpayers for the writ of *mandamus,* or that of injunction, to correct unlawful action by municipal officers, when the action may injuriously affect rights and property of the parties complaining. And according to past applications of the rule, the interest or injury which will support such a suit is broadly comprehensive. * * * (citing cases). It may seem to have been slight in some instances. * * * But the court conceives the rule as stated to be unchanged. * * * In this instance, there is no levy of taxes or outlay of public money to affect the petitioners as taxpayers. As holders of liquor licenses they have no franchises or exclusive privileges to be affected; they have only permits to en-

gage in the business of selling alcoholic liquors. * * * The interest which impels them to sue is only that of business advantage in keeping down the number of their competitors. They are not entitled in law to any advantage in a restricted number; it was not within the purpose of the statute to restrict competition for the benefit of any licensee; and in the accomplishment of the purpose which was sought, whatever it may have been, the petitioners are entirely without special interest."

Cases in other States which have recognized that where the duty is owed to the government as such, as distinguished from the general public or segments of the general public, a private citizen, without special interest, may not have *mandamus* to compel performance of official duty, include: *State ex rel Passer v. County Board* (Minn.), 213 N. W. 545; *State of Louisiana ex rel Gourdon v. Dubuclet*, 28 La. Ann. 85; *State ex rel Chilton County v. Butler* (Ala.), 142 So. 531; *State ex rel Foshee v. Butler* (Ala.), 142 So. 533; *Tuckerman v. Moynihan* (Mass.), 185 N. E. 2; and *State ex rel Naramore v. Hensley* (N. M.), 207 P. 2d 529.

It is our view that the charter provisions as to the designation of physicians give the appellant no legal interest or right sufficient to entitle her to compel performance in a particular manner of the duty owed by the police commissioner to the magistrates and State's Attorney of Baltimore, and that therefore her petition for *mandamus* properly was dismissed.

*Order affirmed, with costs.*